VITALE v REDDY

VITALE v STATE OF MICHIGAN

Docket Nos. 80228, 80229. Submitted November 19, 1985, at Lansing.
—Decided April 8, 1986.

Michael D. Vitale was a resident of the Plymouth Center for Human Development, a facility operated by the state for the care, education and development of the mentally retarded, when he experienced brain-stem problems, while under the care of V. M. Reddy, M.D. Following Michael's death, his father, plaintiff, Salvatore Vitale, as personal representative of the estate, filed a wrongful death suit in Wayne Circuit Court against V. M. Reddy, M.D., and other defendants and a claim against defendants State of Michigan, Department of Mental Health and Plymouth Center for Human Development in the Court of Claims. The cases were consolidated for trial and the suit against the other defendants originally named in the circuit court complaint were dismissed. On the first day of trial, defendants orally moved for summary judgment contending they were entitled to judgment as a matter of law, since plaintiff failed to establish the element of causation. Defendants also moved for summary judgment on the basis of governmental immunity. The circuit court, Maureen P. Reilly, J., granted summary judgment in favor of defendants on the ground that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law because plaintiff could not establish the requisite causal connection between defendants' alleged wrongful acts and the injuries and death of Michael. The court also ruled that governmental immunity barred some of the claims. Plaintiff appealed.
*Held:*

1. Summary judgment based on the lack of a genuine issue as to any material fact is designed to test the factual support of a

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 2, 20-24, 38.

Am Jur 2d, Summary Judgments §§ 26, 30.

Criminal responsibility for physical measures undertaken in connection with treatment of mentally disordered patient. 99 ALR3d 854.

claim. A court, in ruling on such a motion, must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by evidence at trial because of some deficiency which cannot be overcome. The court must give the benefit of any reasonable doubt to the party opposing the motion and must draw any inferences in favor of the opposing party. Upon reviewing the deposition testimony of Dr. Bailey, which defendants offered in support of their contention that plaintiff did not establish causation, the Court of Appeals concluded that the testimony did not show, as defendants claim, that the deceased would have died anyway regardless of any additional actions defendant Reddy could have taken but did not.

2. Presently, neither statutes nor common law recognize the "lost chance" theory of recovery, wherein a plaintiff, who cannot prove that a defendant's actions were the cause of plaintiff's injuries, but can prove that the defendant's actions deprived him of a chance to avoid those injuries, would recover damages for his injuries.

3. The operation of a state mental health facility is a governmental function immune from tort liability, under MCL 691.1407. Therefore, defendants Department of Mental Health and Plymouth Center for Human Development are immune from plaintiff's negligence claims. However, defendant Reddy would be protected by governmental immunity only if she acted (1) within the scope of employment, (2) in good faith, and (3) in a discretionary, not ministerial capacity. Defendant Reddy is not protected by governmental immunity, since her alleged failure to properly diagnose does not involve a discretionary medical decision.

Reversed and remanded, except for the summary judgment on the negligence claim against the state, which was affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

A court considering a motion for summary judgment based on the lack of a genuine issue as to any material fact must, before granting the motion, review the pleadings, affidavits, and other available evidence and, giving the benefit of any reasonable doubt to the opposing party and drawing any inferences in favor of the opposing party, must be satisfied that it is impossible for the claim to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3], now MCR 2.116[C][10]).

2. DEATH — WRONGFUL DEATH — STATUTES.

The wrongful death statute provides for liability whenever the

death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof; all actions for such death or injuries resulting in death must be brought under the statute; in addition, as part of every cause of action, whether based on negligence, intentional tort, or any other theory, the wrongful acts or omissions complained of must be the proximate cause of the injuries sustained (MCL 600.2922[1]; MSA 27A.2922[1]).

3. TORTS — NEGLIGENCE — LOST CHANCE.

Michigan law does not recognize the "lost chance" theory of recovery, wherein a plaintiff, who cannot prove that the defendant's actions were the cause of plaintiff's injuries but can prove that the defendant's actions deprived him of a chance to avoid those injuries, would recover damages for his injuries.

4. GOVERNMENTAL IMMUNITY — MENTAL HEALTH.

The operation of a state mental health facility is a governmental function for which the state is immune from tort liability (MCL 691.1407; MSA 3.996[107]).

5. GOVERNMENTAL IMMUNITY — GOVERNMENT EMPLOYEES.

Public employees are immune from tort liability only where they are acting (1) within the scope of their employment, (2) in good faith, and (3) in a discretionary, not ministerial capacity.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Alan Hoffman,* Assistants Attorney General, for defendants.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and J. D. PAYANT,* JJ.

PER CURIAM. Plaintiff, Salvatore Vitale, instituted this cause of action under the wrongful death statute, MCL 600.2922; MSA 27A.2922, as the personal representative of the estate of his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

deceased son, Michael D. Vitale. Plaintiff's decedent was 27 years old and mentally retarded. For 15 years he had resided at the Plymouth Center for Human Development, a state-operated facility for the care, education and development of the mentally retarded. On January 4, 1979, a ward attendant noted that Michael acted as if he were going to pass out and also that he had fallen on two occasions. On January 5, 1979, after being advised that Michael had an unsteady gait and was sleeping too much, defendant Reddy, a physician at the Plymouth Center, examined Michael. Michael experienced similar problems on January 7 and 8. On January 8, Dr. Reddy reexamined Michael and adopted the belief that his symptoms were the side effects of his medication. Later on January 8, Michael was urgently transferred to the University of Michigan Hospital where he was examined by Dr. Ronald Bailey.

On Janauary 9, after several tests were performed, Dr. Bailey determined that Michael was suffering from brain-stem problems. Michael had a complete occlusion (closure) of two major arteries leading to a part of the brain. The occlusions were formed by blood clots (thrombosis). The main problem was the total occlusion in the basilar artery. There was also a total occlusion of the left vertebral artery, one of the two arteries leading to the basilar artery. Apparently, such occlusions usually develop over time and evolve from a "partial" to a "total" status. Moreover, total occlusions usually cannot be reversed, but there is some possibility of reversing partial occlusions. In this case, Heparin, a blood thinner, was administered in an attempt to reverse the occlusions. This achieved only minimal results with no substantial improvement.

Because the brain stem is a portion of the brain which, in part, controls the body's basic cardiovas-

cular and breathing functions, steps were taken in an attempt to prevent Michael from developing difficulties related to brain stem dysfunction. For instance, a tube was inserted into his trachea in order to mechanically ventilate him. Other action was taken because of some concern over swelling of the brain. However, during the three to three and one-half month period before Michael's death, he ran into numerous problems. He developed pulmonary edema (accumulation of fluid in the lungs) which was presumed to have been on a neurogenic basis and related to the occlusion. He also experienced several episodes of pneumonia (infection of the lung) and a local infection near the tracheostomy site. He finally developed more pneumonia and status epilepticus (continuous seizure activity). The seizures apparently were not related to the brain stem problems but made hydrating, feeding, maintaining eletrolyte balance and other treatments more difficult. Eventually, Michael had a cardiac arrest (stoppage of the heart). His death occurred on June 4, 1979.

On January 5, 1981, plaintiff filed a complaint in circuit court, naming Dr. Reddy as one of several defendants. He also instituted a cause of action in the Court of Claims against the State of Michigan and the Plymouth Center. The cases were consolidated and the additional defendants who were originally named were dismissed from the suit. Plaintiff's complaint set forth a wrongful death action, wherein he asserted claims of medical malpractice, intentional tort, violation of the mental health code, and constitutional and civil rights violations.

Plaintiff alleged breaches of many duties by defendants. Allegedly, Dr. Reddy failed to exercise the requisite degree of skill and care when diagnosing and treating Michael. Plaintiff alleged that

Dr. Reddy should have recognized Michael's serious condition earlier than she did and should have ordered him to be transferred sooner to a qualified hospital for prompt diagnosis and treatment. There were many other allegations of failure to properly supervise and provide adequate medical care. There were also allegations that the defendants failed to adopt necessary policies and procedures. Plaintiff alleged that as a direct and proximate result of defendants' breaches of duties, wilful and wanton violations of duties, violations of the health code, and violations of constitutional rights, Michael was caused to incur extreme pain and suffering and eventual death. Both his estate and family suffered damages because of this.

Trial was scheduled for June 4, 1984, and on that date defendants orally moved for summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), in regard to the element of causation. During oral argument on the motion, plaintiff objected to defendants' lack of affidavits in support of their motion.[1] Defendant also moved for summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(G)(8), on the basis of governmental immunity. After listening to the parties' arguments, the trial court granted summary judgment in favor of defendants on the ground that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law on all the claims

---

[1] Plaintiff argues that the trial court's grant of summary judgment is subject to automatic reversal because defendants failed to file any affidavits in support of their summary judgment motion pursuant to GCR 1963, 117.2(3). We decline to reverse the grant of summary judgment on this basis. Requiring the submission of affidavits in this case would serve no legitimate purpose. Instead of submitting an affidavit, defendants relied on the deposition testimony of plaintiff's expert. Furthermore, affidavits are now only one of several alternative documents which may be used to support or oppose the grounds asserted in a motion for summary judgment. See MCR 2.116(G)(2).

because plaintiff could not establish the requisite causal connection between defendants' alleged wrongful acts and plaintiff's decedent's injuries and death. The court also ruled that governmental immunity barred some of the claims. Plaintiff now appeals as of right.

I

Summary judgment pursuant to GCR 1963, 117.2(3), is proper only if there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. A motion based on GCR 1963, 117.2(3) is designed to test the factual support for a claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561 (1983), *lv den* 417 Mich 1100.15 (1983). A court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by evidence at trial because of some deficiency which cannot be overcome. 122 Mich App 663. The court must give the benefit of any reasonable doubt to the party opposing the motion and inferences are to be drawn in favor of that party. 122 Mich App 663.

Defendants moved for summary judgment, arguing that there was no material issue of fact in regard to causation and that they were therefore entitled to judgment as a matter of law. Defendants argued that the undisputed facts indicated that even if they had committed any of the wrongful acts or omissions which were alleged, such acts or omissions were not a cause of Michael's injuries or death. In support of their argument, defendants relied on the deposition testimony of Dr. Ronald Bailey. Defendants contend, in essence, that Dr.

Bailey's testimony indicates that, even if Michael had been taken to the hospital earlier, he still would have suffered the same injuries and died.

In response, plaintiff submitted no other evidence. Rather, plaintiff argued that defendants were required to produce some medical evidence, by way of deposition or affidavit, that it was probable that Michael would have died from the thrombosis even if the diagnosis had been made earlier. Plaintiff claimed that defendants had submitted no evidence which would show the probability that Michael would have died if the diagnosis had been made earlier. Plaintiff also argued that, even if it was probable that Michael would have died, plaintiff should be able to recover for the "value of the lost chance" of survival. Plaintiff felt that the deposition supported his position.

The trial court held that there was no genuine issue of fact and that defendants were entitled to summary judgment in their favor because the required causal connection did not exist. We believe that the trial court improperly granted summary judgment on this ground.

The wrongful death statute provides for liability whenever the death of a person or injuries resulting in death "shall be caused by wrongful act, neglect or default" and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof. MCL 600.2922(1); MSA 27A.2922(1). All actions for such death, or injuries resulting in death, must be brought under that statutory provision. In addition, as a part of every cause of action, whether based on negligence, intentional tort, or any other theory, the wrongful acts or omissions complained of must be the proximate cause of the injuries sustained. Defendants contend that there are un-

disputed facts which establish that no causal connection exists. We disagree.

Defendants rely on Dr. Bailey's deposition testimony. A review of his testimony does not indicate that there is no causal connection. The doctor testified that if Michael had been taken to the hospital earlier, there was a possibility, but not a probability, that the thrombosis (blood clotting) could have been reversed, depending on whether there was a total or partial occlusion. This possibility of reversal would exist if the occlusion was only partial. His testimony, while somewhat unclear, also indicated that if there was only a partial occlusion, chances were that the Heparin would prevent the thrombus from getting any larger.

The doctor also testified that in 1979, medical procedures and equipment were not available by which to determine whether the occlusion had been partial or complete on the days prior to the patient's admission to the hospital. However, the doctor did not indicate whether he, or any other doctor, could supply a professional opinion as to the status of the occlusion on those days. Moreover, defendants submitted no other evidence indicating that the occlusion had been total. In order for defendants to be entitled to summary judgment, it would have been necessary for them to have submitted evidence that the occlusion was total during those days and it also would have been necessary for there to have been no genuine issue in regard to that fact. As an alternative, defendants could also have offered uncontradicted evidence that Michael would have developed the same physical problems at the hospital even if the occlusion were only partial. The bottom line is that defendants needed to show, with undisputed

facts, that the injuries and death would have occurred anyway. This they did not do.

Because defendants submitted no evidence in that regard, we must assume that the occlusion was only partial in the days preceding Michael's admission to the hospital. Dr. Bailey testified that if the occlusion was only partial, chances were that the administration of Heparin would prevent the thrombus from getting any larger. Thus, it is reasonable to conclude that the occlusion would have remained a partial one. Michael's problems at the hospital occurred at a point in time when he suffered from total occlusion of both of the arteries involved. There is no indication that he would have had the same physical reactions if the occlusion had been only partial. Furthermore, there was no testimony that the same procedures would even have been followed if the occlusion were only partial. Without such evidence, it cannot be said that the requisite causal connection did not exist.

We emphasize the fact that this case was presented to the trial court by a pretrial motion for summary judgment. The result would be different if the deposition were the only evidence submitted *at trial.* At trial, plaintiff will be required to prove causation by a preponderance of the evidence. He will have to submit evidence indicating that the occlusion was only partial and that injury and death would not have resulted. If plaintiff does not do so, a directed verdict may be proper at that time. However, the question before us is whether summary judgment was properly granted as a matter of law. It was not. The facts presented by defendants, even though not contradicted by plaintiff, do not entitle defendants to judgment as a matter of law.

II

Because this case will be remanded and may proceed to trial, we must, in the interest of justice, consider plaintiff's alternate theory of "value of lost chance". We find that plaintiff may not presently avail himself of this theory.

This theory is potentially available in situations where a plaintiff cannot prove that a defendant's actions were the cause of his injuries, but can prove that the defendant's actions deprived him of a chance to avoid those injuries.[2] For instance, consider the following. A patient has contracted a disease which will eventually, in its natural course, lead to the patient's death. The patient's physician knows of an operation which, if performed on this patient, could possibly stop the progression of this disease. However, the odds are that it would not. The nature of this operation is such that there is minimal risk to the patient from the procedures employed in the operation itself. Assume also that the doctor fails to perform the operation and the patient dies.

Under such circumstances, the patient's estate will not have a cause of action against the doctor, because it cannot be proven that the doctor's omission caused the patient's death. The Supreme Court has defined proximate cause as "that which

[2] Such a situation could possibly arise under the proofs submitted at trial in this case if such proofs consist of the following: (1) proof that the occlusion was only partial in the days preceding Michael's admission to the hospital; (2) proof that if the thrombus had been stopped before growing larger, but had not been reduced in size, Michael's injuries and death would still have resulted; and (3) proof that if the occlusion would have been made smaller, i.e., reversed, then Michael would not have received injuries and died. Under those circumstances, proof indicating that there was a possibility, but not a probability, that the thrombus could have been reduced in size if plaintiff's decedent had been taken to the hospital earlier leads to the conclusion that defendants' wrongful acts or omissions only possibly, but not probably, caused the death and injury of plaintiff's decedent.

in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred". See *McMillian v Vliet,* 422 Mich 570, 576; 374 NW2d 679 (1985). No rational trier of fact could conclude that without the doctor's omission death would not have occurred. Because it was not probable that the operation would have stopped the progression of the disease, a rational trier of fact must conclude that death would have occurred even without the doctor's omission, *i.e.,* even if the doctor had performed the operation.[3]

While the plaintiff in this hypothetical situation cannot prove that the patient's death was caused by the doctor, the plaintiff can prove that the doctor's omission in failing to perform the operation caused the patient to lose the "chance" to stop the progression of his disease. If the chance that this patient would be helped by the operation were, for example, a 49% chance, it seems to us that the patient, or his estate, should justifiably be upset that the operation was not performed. While the odds suggest that the operation would not have been successful, there was a very substantial possibility or chance that the operation would have been successful. Assuming that the costs and risks involved with the operation would have been minimal, any rational person would have selected to undergo the operation. However, under traditional analysis, the doctor, or anyone else who caused the patient to lose his chance of recovery, would not be required to respond in damages.

[3] If there is proof that it is probable that an operation will save a life, a negligent diagnosis or failure to treat can be a proximate cause of the death. Proof of probability is sufficient. See *Harvey v Silber,* 300 Mich 510; 2 NW2d 483 (1942). We note that *Rogers v Kee,* 171 Mich 551; 137 NW 260 (1912), also supports the proposition that a showing of probability of a better recovery provides a sufficient basis from which to infer proximate cause.

Presently, neither the statutes nor the common law of the State of Michigan recognize a "lost chance" as a compensable injury. Plaintiff would have us create a new rule of law which would allow compensation for the value of a lost chance. While such a rule of law would perhaps lead to just results in some circumstances, we are not able or willing to take the step which plaintiff would have us take. Numerous policy considerations are involved in such a decision. This matter is best left to either the Supreme Court or the Legislature.[4]

### III

In addition to the grant of summary judgment on the ground of causation, the trial court also granted summary judgment to defendants pursuant to GCR 1963, 117.2(1) for failure to state a claim upon which relief could be granted on the basis of governmental immunity. The trial court held that governmental immunity did not bar the intentional tort claim or any negligence claim as it related to constitutional rights violations. However, the trial court held that governmental immunity otherwise barred plaintiff's negligence claims, both as to malpractice and violation of statutory duties. The only issue raised before us on appeal is whether governmental immunity bars plaintiff's negligence claims. We hold that it does as to the state but not as to the doctor.

Under MCL 691.1407; MSA 3.996(107), all governmental agencies are immune from tort liability

---

[4] We note that in cases where the cause of action is one for wrongful death, the statute requires proof that the wrongful acts or omissions were the cause of death. The statutory provision would not allow a plaintiff to recover in a situation where he could prove only that defendant's acts or omissions were the cause of a lost chance but could not prove that defendant's acts or omissions were the cause of death.

in all cases wherein the agency is engaged in the exercise or discharge of a governmental function. The operation of a state mental health facility is a governmental function. *Ross v Consumers Power Co (On Reh),* 420 Mich 567, 620, 642-643; 363 NW2d 641 (1984). The state is therefore protected by governmental immunity.

As to Dr. Reddy, she is protected by governmental immunity only if she acted (1) within the scope of employment, (2) in good faith, and (3) in a discretionary, not ministerial, capacity. We find that Dr. Reddy was performing ministerial-operational acts, as opposed to discretionary-decisional acts. As stated by this Court in *Davis v Lhim (On Remand),* 147 Mich App 8; — NW2d — (1985): "A professional, otherwise liable because he or she has deviated from the appropriate standard of care, cannot contend that he or she had discretion to violate that standard." Once the doctor chose to conduct an examination and to diagnose plaintiff's decedent, such examination and diagnosis should have been conducted properly. A doctor cannot choose to improperly diagnose a patient. While the doctor can choose the best method for carrying out her duties, the actual performance of those duties must be done in a conscientious and appropriate manner. Thus, Dr. Reddy is not protected by governmental immunity. The failure to properly diagnose does not involve a discretionary medical decision, such as deciding whether a certain treatment is necessary for a patient's condition. See, *e.g., Tobias v Phelps,* 144 Mich App 272, 281; 375 NW2d 365 (1985).

As a final matter, we note that plaintiff would have us remand this case to the trial court with instructions that plaintiff be permitted to amend his complaint to allege a breach of contract against the State of Michigan for failing to provide

plaintiff's decedent with proper medical care and treatment. Plaintiff did not raise this issue below. We decline to instruct the trial court to permit plaintiff to amend his complaint. Rather, plaintiff shall proceed in accord with MCR 2.118(A) on remand if he desires to amend his complaint.

## CONCLUSION

We affirm the trial court's grant of summary judgment on plaintiff's negligence claim against the state. As to all other claims, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.