LOFTIS v G T PRODUCTS, INC

Docket Nos. 92784, 93353. Submitted October 20, 1987, at Lansing.
Decided April 18, 1988. Leave to appeal applied.

Richard C. Loftis brought an action in the Washtenaw Circuit
Court against his former employer, G. T. Products, Inc., alleg-
ing wrongful discharge (Count I), negligent performance of an
employee evaluation (Count II), and violation of the Employee
Right to Know Act and invasion of privacy (Count III). Defen-
dant's motion for summary disposition was granted by the trial
court, William F. Ager, Jr., J., in regard to Counts I and III and
denied as to Count II. Plaintiff appeals by leave granted from
the order granting defendant's motion in regard to Counts I
and III. Defendant appeals by leave granted from the order
denying its motion in regard to Count II. The appeals were
consolidated.

The Court of Appeals *held:*

1. The trial court properly granted defendant summary dispo-
sition on Count I.

2. The trial court erred in denying defendant's motion for
summary disposition as to Count II. Plaintiff could not present
a triable issue of fact and law as to a claim for wrongful
discharge to avoid summary disposition on Count II. Plaintiff
did not allege a breach of duty in Count II which was distinct
from the breach of contract, an essential element of a cause of
action for negligent evaluation. A tort action for negligent
evaluation must rest on a breach of duty distinct from the
breach of the contract duty.

3. The trial court properly granted defendant summary dispo-
sition on Count III.

Affirmed in part and reversed in part.

J. T. CORDEN, J., concurred in the affirmance of the trial
court's disposition of Counts I and III. He believes, however,
that the trial court properly denied defendant's motion for

REFERENCES

Am Jur 2d, Contracts §§ 521-522.

Am Jur 2d, Summary Judgment § 1.

For annotations, see Index to Annotations under Contracts, Sum-
mary Judgment and Torts.

summary disposition as to Count II. Noting the duty to perform any undertaking with reasonable care, he believes that plaintiff is entitled to have defendant's alleged breach of duty and its consequences analyzed, tested and resolved as any other allegation of fact without, as a condition precedent, withstanding a motion for summary disposition on a wrongful discharge claim.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUE OF MATERIAL FACT.

A motion for summary disposition alleging that there is no genuine issue as to any material fact tests the factual support for the claim; the court must consider the pleadings, affidavits, and other available evidence, give the benefit of any reasonable doubt to the party opposing the motion, and draw inferences in favor of that party; the court, before granting the motion, must be satisfied that no factual development could possibly justify recovery by the nonmoving party; the motion may be granted only where there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law (MCR 2.116[C][10]).

2. TORTS — CONTRACTS — ACTIONS.

Some fact situations may support actions for both a tort and a breach of contract; misfeasance or negligent performance of a contractual duty may support either a tort or a contract action, while nonfeasance gives rise only to an action on the contract; a tort action will lie if a relationship or situation of peril exists that would give rise to a legal duty without the need to enforce the contract promise itself.

3. ACTIONS — CONTRACTS — TORTS.

A breach of contract may in some instances give rise to an independent action arising in tort when there is a breach of duty which is distinct from the breach of contract.

*Philip E. Hodgman,* for plaintiff.

*Miller, Johnson, Snell & Cummiskey* (by *Jon G. March, William H. Fallon* and *Elizabeth M. McIntyre*), for defendant.

Before: M. J. KELLY, P.J., and DOCTOROFF and J. T. CORDEN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

DOCTOROFF, J. Plaintiff filed suit against defendant, his former employer. He now appeals by leave granted from the trial court's order granting defendant's motion for summary disposition on Count I of his complaint, alleging wrongful discharge, and Count III, alleging violation of the Employee Right to Know Act, MCL 423.501 *et seq.*; MSA 17.62(1) *et seq.*, accompanied by an invasion of privacy claim. MCR 2.116(C)(10). Consolidated with plaintiff's appeal is defendant's appeal by leave granted from the trial court's order denying its motion for summary disposition on Count II of plaintiff's complaint, alleging negligent evaluation. MCR 2.116(C)(8). We reverse in part and affirm in part.

On March 15, 1982, defendant hired plaintiff to work as a machine operator. On April 12, 1983, plaintiff was fired. The immediate cause of plaintiff's firing was his failure to appear for at least two consecutive weekend overtime shifts. Missing overtime is a violation of the rules of good conduct established in defendant's employee information handbook, § 19.

Plaintiff had also been cited several times for poor attitude and work problems. Between June and September, 1982, plaintiff was written up seven times for low productivity, wasting time, quitting early and poor attitude. Plaintiff met with his supervisor, the plant superintendent, and the personnel director, as required in the employee information handbook, § 18. There was no disciplinary action taken against plaintiff at that time.

From September, 1982, to February, 1983, plaintiff was laid off from work. Plaintiff contends that his productivity improved following his recall in February, 1983, but the record does not contain any performance evaluations reflecting this improvement. Further, plaintiff admitted that he

missed scheduled Saturday overtime, without excuse, on two occasions. Defendant alleges plaintiff missed three overtime sessions.

In April, 1983, A. H. Turner, president of defendant corporation, decided to discharge plaintiff. He referred the matter to a committee known as the Employee Committee, which was comprised of plaintiff's coworkers. The purpose of this was to ascertain the committee members' opinions regarding whether plaintiff should be given another chance. The Employee Committee reviewed plaintiff's personnel file, which included documentary evidence of his absences and write-ups for the period of June to September, 1982. It unanimously recommended that plaintiff be fired. The president informed plaintiff that he was being fired for missing the scheduled Saturday overtime.

I

Plaintiff first claims that the trial court erred by granting summary disposition for defendant on Count I, plaintiff's wrongful discharge claim. MCR 2.116(C)(10). We disagree.

Summary disposition pursuant to MCR 2.116(C)(10) is proper only if there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. The motion tests the factual support of the claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561 (1983), lv den 417 Mich 1100.15 (1983). The court must consider the pleadings, affidavits, and other available evidence, give the benefit of any reasonable doubt to the party opposing the motion, and draw inferences in favor of that party. *Vitale v Reddy,* 150 Mich App 492, 498; 389 NW2d 456 (1986). Before granting sum-

mary disposition, the court must be satisfied that no factual development could possibly justify recovery by the nonmoving party. *Id.*

In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), the defendant company had promulgated personnel policies and disciplinary procedures in the Blue Cross "Supervisory Manual" and "Guidelines" pamphlet. The manual included provisons for warnings, notices and hearing procedures in the event of disciplinary actions. The manual also stated that termination would only occur for just cause. The plaintiff was terminated after the decision was reviewed by the personnel department, the company president and the chairman of the board of trustees, but he was not given the benefit of all the procedures in the Supervisory Manual. The plaintiff argued that Blue Cross and Blue Shield was obliged to follow its written and oral promises. The Court held that, since Blue Cross and Blue Shield had willingly published its personnel policies and practices, a jury could find that contractual obligations existed between the employer and the employee, such that the employer could only terminate for just cause. 408 Mich 617-619. Accordingly, judgment for the defendant was reversed.

*Toussaint* demonstrates that an employee handbook can generate contractual obligations between the employee and the employer. Accordingly, defendant in the present case had an obligation to plaintiff to follow the personnel policies and practices set forth in its G. T. Products employee handbook. According to the handbook's provisions, defendant could not fire plaintiff at will.

Section 19 of the handbook is entitled, "Rules of Good Conduct." It states:

The following rules of good conduct are established in the best interest of all concerned. Willful infraction of these rules will be cause for immediate discharge or other disciplinary action, depending upon the seriousness of the offense. Examples of misconduct, which are not all inclusive, are listed below:

\* \* \*

(23) Failure or refusal to work overtime as instructed by supervision.

Examining the language of § 19 leads to the unalterable conclusion that defendant's employees could be disciplined for refusing to work overtime and could possibly be discharged for refusing to do so. Without involving the court in an examination and technical evaluation of the legal niceties of § 19, we believe that an employee reading said section could only conclude that refusing overtime could result in termination.

Plaintiff argues that § 18 of the employee handbook lists a four-step procedure for disciplinary action and that defendant failed to follow the last two steps. He asserts that a genuine issue of fact was presented concerning the section under which he was terminated. Section 18 states that the procedure will be used for infractions such as improper work procedures, poor attendance, tardiness and unacceptable work habits. By its own terms, the procedures set forth in § 18 are not involved when disciplinary action is required for a variety of specified acts, such as fighting, theft, use of alcohol or drugs, or other "serious misconduct." Section 19 then proceeds to list twenty-five broad-ranging examples of misconduct for which an employee can be immediately discharged. We note that although the firing was presumably done pursuant to § 19, the defendant's president gave plaintiff's personnel file to the employee commit-

tee, a procedure called for only under § 18. This procedure was not completed through all four steps. Nonetheless, the effect of reading § 18 and § 19 together gives the company total discretion to decide when it will use the graduated § 18 disciplinary procedure and when it will fire an employee on the spot pursuant to § 19. Defendant granted plaintiff an opportunity to which he was not entitled by providing for advisory review by the employee committee. Plaintiff is in the position of one who, having claimed a benefit pursuant to a program such as established in the employee handbook, must take the bitter with the sweet. If there are conditions attached to that employment contract, his failure to abide by them may cost him the benefits that would otherwise accrue. See *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188, 198; 390 NW2d 227 (1986). When reading § 18 and § 19, we are left with the conclusion that § 19 clearly grants to the defendant the right to fire the plaintiff and that the plaintiff, on reading § 19, must know that this provision gives defendant that right. The clear meaning of § 19 is that termination can result from failure to work overtime.

Plaintiff relies on *Damrow v Thumb Cooperative Terminal, Inc,* 126 Mich App 354; 337 NW2d 338 (1983), which is distinguishable from the present case. In *Damrow,* the plaintiff was hired as a bookkeeper and later became office manager. The defendant company issued a policy manual that stated that no employee would be discharged without prior final warning. The manual also outlined a graduated disciplinary procedure for poor work performance. There were provisions for immediate discharge in the event of gross misconduct. The plaintiff in *Damrow* was fired by her superior after receiving two verbal warnings. This Court con-

curred in the trial court's implicit finding that plaintiff was not discharged for gross misconduct. Therefore, in order to fire the plaintiff, the defendant had to comply with the graduated disciplinary procedures outlined under the section dealing with performance. 126 Mich App 364. The Court found that defendant did not comply.

That case is distinguishable from the present case, in that defendant here followed § 19 of its handbook. The handbook defines several offenses that could result in termination, and the company exercised its option in plaintiff's case.

In the present case, we conclude that the trial court was correct and affirm its order granting summary disposition to defendant on Count I of plaintiff's complaint.

II

Defendant claims on appeal that the trial court erred by denying its motion for summary disposition as to Count II of plaintiff's complaint, alleging negligent evaluation of his work performance. MCR 2.116(C)(8). Defendant contends that such a claim is based on alleged contractual obligations to evaluate performance as part of the employment relationship and that a tort action may not be premised on a legal duty which arises solely by virtue of an alleged contract.

Plaintiff asserts that defendant was required under the employee information handbook to evaluate its employees and to do so using reasonable care. He alleges that his evaluations were misleading, inaccurate and negligently compiled, resulting in economic and psychological damages to him.

The trial court, relying on the opinion of this Court in *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), and *Chamberlain v*

*Bissell Inc,* 547 F Supp 1067, 1080-1081 (WD Mich, 1982), ruled that the plaintiff's Count II stated a cause of action for negligent evaluation of his work performance. The court ruled that defendant had a contractual obligation to perform periodic evaluations and to do so using ordinary care. It determined that the question whether defendant had done so presented a factual issue.

We are aware that in *Schipani, supra,* a panel of this Court recognized a cause of action for negligent performance of employee evaluations, ruling that the employment contract which required performance evaluations included a common law duty to perform these evaluations with ordinary care, and, thus, negligent performance could constitute a tort as well as a breach of contract. *Id.,* pp 623-624.[1]

However, the trial court in the present case overlooked a key portion of the *Schipani* panel's holding:

> We find that where the trier of fact is allowed to determine whether the contract was terminable at will or whether defendant and plaintiff had a binding contract which was breached by defendant (Count I), the issues of defendant's negligence in carrying out the evaluations of plaintiff's performance should also be determined by the trier of fact. [*Id.,* p 624.]

Pursuant to *Schipani,* then, the prerequisite to avoiding summary disposition is that plaintiff must present a triable issue of fact and law as to a claim for wrongful discharge. In this case, plaintiff

---

[1] Following the lead of *Schipani,* a federal district court in *Chamberlain, supra,* upheld a claim for negligent performance of an employee's evaluation, holding that a complete failure to perform a contractual obligation is actionable only as a breach of contract, but the negligent performance of the obligation is actionable as a tort.

could not do so and his wrongful discharge claim was properly dismissed on a motion for summary disposition. Therefore, his claim for negligent evaluation, even per *Schipani,* also fails.

Even if plaintiff had presented a triable issue as to whether he was wrongfully discharged, he did not allege a breach of duty in Count II which was distinct from the breach of contract, an essential element of a cause of action for negligent evaluation that *Schipani* does not address.

Subsequent to the holding in *Schipani,* another panel of this Court disallowed such a claim in *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641; 378 NW2d 558 (1985).[2] In *Brewster,* plaintiff-employee filed an action for wrongful discharge under *Toussaint, supra,* and also for negligent breach of an implied employment contract, alleging damages for mental distress, suffering and humiliation. Upon plaintiff's appeal of the trial court's order granting judgment notwithstanding the verdict on the tort claim of negligent breach of implied contract, this Court affirmed, stating, "in some instances a breach of a contract may give rise to an independent action arising in tort when there is a breach of duty which is distinct from the breach of contract." *Brewster, supra,* p 667. The *Brewster* Court concluded:

> [B]ecause there was no breach of duty *distinct* from the breach of contract, plaintiff's cause of action arose from a breach of promise or the nonfeasance of a contractual obligation and her action is in contract, not in tort. A relationship did not exist in this case which would give rise to a

[2] See also *Sankar v Detroit Bd of Ed,* 160 Mich App 470, 479-480, n 2; 409 NW2d 213 (1987), and cases cited therein questioning the viability of the tort of negligent evaluation.

legal duty without enforcement of the contract promise itself. [*Id.,* p 668.]

The Court in *Brewster* relied, as did the Courts in *Schipani* and *Chamberlain,* on *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956). In that case, the Supreme Court discussed the common origins of English common law tort and contract law and noted that some cases may support both a tort and a contract action. *Id.,* pp 560-564. Misfeasance or negligent performance of a contractual duty may support either a tort or a contract action, while nonfeasance gives rise only to an action on the contract. *Id.* Our Supreme Court explained that determining whether misfeasance would support a tort action or only a contract action depends not on the slippery distinction between action and nonaction, but on the concept of duty. *Id.,* p 565. A tort action will lie if a relationship or situation of peril exists that would give rise to a legal duty without the need to enforce the contract promise itself. *Id.*

Respecting the case before it, the *Hart* Court found that the facts would only support a breach of contract action and not a tort action:

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie. *Id.,* pp 565-566.

One year following *Brewster,* another panel of this Court affirmed dismissal of a negligent discharge claim for failure to state a claim in *Struble v Lacks Industries, Inc,* 157 Mich App 169; 403 NW2d 71 (1986), where the Court held:

> A breach of an employment contract does not give rise to an action sounding in negligence when the breach of duty is indistinguishable from the breach of contract. In essence, plaintiff is merely asserting that the defendant negligently fired her by breaching contractual promises arising from defendant's policies and procedures governing discipline. These facts are evidence in support of her breach of contract claim but do not establish a separate cause of action in tort. [Citations omitted. *Id.,* p 176.]

See also *Hetes v Schefman & Miller Law Office,* 152 Mich App 117, 121-122; 393 NW2d 577 (1986); *Haas v Montgomery Ward & Co,* 812 F2d 1015, 1016-1017 (CA 6, 1987); *Brock v Consolidated Biomedical Laboratories,* 817 F2d 24 (CA 6, 1987).

We note that the *Schipani* and *Chamberlain* opinions on which the trial court relied ignore the qualifying language from *Hart* regarding the fundamental concept of duty. *Brewster* correctly interprets *Hart* to require a tort action to rest on a breach of duty distinct from the breach of the contract duty. *Brewster, supra,* p 668; *Hart, supra,* p 565.

In this case, Count II of plaintiff's complaint does not allege a breach of duty distinct from the alleged breach of the employment contract. Although plaintiff contends that defendant was contractually obligated according to the employee information handbook to properly evaluate his work performance, if those evaluations were indeed negligently compiled, then defendant would

not have performed its obligation under the contract which would constitute a breach of the contract. If defendant then discharged plaintiff based upon the negligently compiled or inaccurate evaluations, then defendant would have breached its duty to discharge plaintiff only for good cause, which is a basis for a breach of contract action. *Toussaint, supra.*

Accordingly, we find that defendant's motion for summary disposition as to Count II should have been granted and reverse the trial court.

### III

Plaintiff next claims that the trial court erred by granting summary disposition to the defendant on Count III, alleging violation of § 6 of the Employee Right to Know Act, MCL 423.506; MSA 17.62(6),[3] which prohibits an employer from disseminating disciplinary reports to third parties unconnected to the employer's organization. MCR 2.116(C)(10). He contends that defendant violated his rights under the Employee Right to Know Act when it disseminated material from his disciplinary records to defendant's employee committee. He argues that the employee committee was not used as part of the § 18 disciplinary procedure and that a fact issue exists as to whether the employee committee was properly operating in its capacity as a disciplinary review board.

Defendant argues that, under the act, parties interested in the employment relationship are not

---

[3] MCL 423.506; MSA 17.62(6), provides in relevant part:

(1) An employer or former employer shall not divulge a disciplinary report, letter of reprimand, or other disciplinary action to a third party, to a party who is not a part of the employer's organization, or to a party who is not a part of a labor organization representing the employee, without written notice as provided in this section.

third parties to whom dissemination of an employee's records is prohibited. It asserts that the employee committee at G. T. Products was intended to assist in maintaining good employment relations and was intended to benefit both the employer and the employee.

Section 27 of the employee information handbook establishes an employee committee:

> G. T. Products is a nonunion company. This allows all of us to deal directly with each other rather than through a third party. We can operate as a team which makes us more competitive in the marketplace, therefore assuring all of us growth potential and a long-term future. . . . The Employee Committee was established to keep open communications between all employees. Any employee interested in serving on this committee may do so by submitting their name to their supervisor. Employees will be chosen at random from the names submitted. Service on the committee will be on a rotational basis with each employee so desiring, having a turn to serve.
>
> The Employee Committee will meet regularly or on special occasions as necessary.

The trial court concluded that the employee committee is part of the employer's organization for purposes of the Employee Right to Know Act, having an organizational function that is related to the success and productivity of the enterprise. Although there is no case law to guide us in this regard defining the term "part of the employer's organization," we agree with the trial judge, who determined that the committee, because it is established in the employee information handbook and is used as part of the disciplinary procedures established in § 18 of the handbook, is a part of defendant's organization. As the trial court found, to rule otherwise would preclude nonunion busi-

nesses from using employee committees in disciplinary proceedings where disciplinary reports are reviewed.

Accordingly, we affirm the trial court's order granting summary disposition to the defendant on Count III of plaintiff's complaint.

In conclusion, we reverse the portion of the trial court's order denying defendant's motion for summary disposition on plaintiff's negligent evaluation claim, Count II. We affirm both the portion of the order granting summary disposition to the defendant on plaintiff's wrongful discharge claim, Count I, and that portion granting summary disposition to the defendant on plaintiff's claim for violation of the Employee Right to Know Act, Count III.

Affirmed in part and reversed in part.

M. J. KELLY, P.J., concurred.

J. T. CORDEN, J. *(concurring in part and dissenting in part).* I join in affirming the trial court's disposition of Counts I and III. However, I respectfully dissent from the reversal of the order denying defendant's motion for summary disposition of the negligent evaluation claim, Count II. *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), recognizes a cause of action for the negligent performance of contractually required employee evaluations.

The trial court found that the employment contract between the parties imposed upon the employer the duty to perform periodic evaluations. Whether that duty was breached, and led to plaintiff's discharge, is a factual question. *Schipani, supra,* which derives its authority from the Michigan Supreme Court's rulings in *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), and *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967), that

the duty of care required to support a negligence action may arise from a contractual relationship, recognizes that a duty, once assumed, must be performed with reasonable care and a plaintiff is entitled to have the alleged breach of duty and its consequences analyzed, tested and resolved as any other allegation of fact. *Schipani, supra,* does, not however, require as a condition precedent that plaintiff must withstand summary disposition on a wrongful discharge claim before the negligent evaluation claim can be considered. Whether or not a contract governs the conduct of the parties, *Hart, supra,* states that the duty to perform any undertaking must be done with reasonable care. For these reasons, I believe the trial court properly denied defendant's motion for summary disposition as to Count II.