FALCON v MEMORIAL HOSPITAL

Docket No. 101586. Submitted October 13, 1988, at Detroit. Decided July 5, 1989. Leave to appeal applied for.

Nena J. Falcon died from an amniotic fluid embolism following the otherwise normal delivery of her child at Memorial Hospital. Ruby Falcon, as administratrix of the decedent's estate, brought a wrongful death action in Monroe Circuit Court against the hospital and Dr. S. N. Kelso, Jr. The hospital filed a cross-claim against Dr. Kelso and a third-party complaint against Norma Denny, the nurse-anesthetist who had monitored the decedent's condition while she was under spinal-block anesthesia. At trial, the court, Daniel L. Sullivan, J., refused to allow plaintiff to present expert testimony to the effect that an i.v. should have been in place prior to the administration of anesthesia and that, had the i.v. been in place, there would have been a 37.5 percent probability that the decedent's life could have been saved when the embolism arose. The court ruled that plaintiff's experts were not qualified to testify. The court subsequently directed a verdict in favor of the hospital and Dr. Kelso. The order granting the directed verdict also dismissed the third-party complaint and cross-claim. Plaintiff appealed the directed verdict, but defendant hospital did not pursue a cross appeal of the dismissal of its claims against Dr. Kelso or Nurse Denny. The Court of Appeals, in an unpublished opinion per curiam, decided August 12, 1986 (Docket No. 83193), reversed the trial court and remanded the case. On remand, the trial court granted summary disposition in favor of the hospital and Dr. Kelso, ruling that the expert testimony proposed by plaintiff would be insufficient to raise a question for the jury with regard to proximate causation since plaintiff needs to prove, but cannot, that the omission of the i.v. caused the decedent's death. Plaintiff again appealed and Nurse Denny cross appealed to challenge the trial court's denial of her

REFERENCES
Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 359, 360.
Physician's or surgeon's liability for injury to mother in pregnancy and childbirth cases. 99 ALR2d 1336.

motion to amend the pleadings so as to eliminate her as a third-party defendant.

The Court of Appeals *held:*

1. In a wrongful death action brought against a physician on the basis of the physician's failure to perform a specific procedure or administer a specific treatment, the plaintiff may establish such failure as a proximate cause of death by showing that the omitted procedure or treatment probably would have improved the patient's condition or prevented his death. The plaintiff, however, is not entitled to recovery as a matter of law merely because the physician failed to perform some procedure or treatment that could have had some minuscule possibility of improving the patient's condition or saving his life, since the jury must determine whether, under the applicable standard of care, the physician should have performed the omitted procedure or treatment. Where the omission does not breach the standard of care, the plaintiff cannot recover.

2. Since the hospital did not claim a cross appeal at the time of the prior appeal, the disposition as to Nurse Denny now represents a final resolution of the matter on which no appeal was claimed. Accordingly, the claim as to Denny may not now be relitigated.

Reversed and remanded for further proceedings.

NEGLIGENCE — WRONGFUL DEATH — MEDICAL MALPRACTICE — PROXIMATE CAUSE.

In a wrongful death action against a physician wherein it is alleged that the physician failed to perform a specific procedure or administer a specific treatment, such failure or omission may be established as a proximate cause of death by a showing that the omitted procedure or treatment probably would have improved the patient's condition or prevented his death; the plaintiff, however, is not entitled to recovery as a matter of law merely because the physician failed to perform the procedure or treatment, since the jury must determine whether, under the applicable standard of care, the physician should have performed the omitted procedure or treatment; where the omission does not breach the standard of care, the plaintiff cannot recover.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Monica Farris Linkner*), for Ruby Falcon.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Memorial Hospital.

*Weipert, Morr & Weipert* (by *Michael A. Weipert*), for S. N. Kelso, Jr., M.D.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Richard E. Eaton* and *Ann M. Cisco*), for Norma Denny.

Before: HOLBROOK, JR., P.J., and SAWYER and J. M. BATZER,* JJ.

SAWYER, J. Plaintiff appeals from an order of the circuit court granting summary disposition to defendants Memorial Hospital and Dr. S. N. Kelso, Jr., pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Additionally, third-party defendant Norma Denny cross appeals, challenging the trial court's order denying her motion to amend the pleadings to eliminate her as a third-party defendant. We reverse in both respects.

This matter, which has lingered in the court system for over fifteen years, arises from the death of plaintiff's decedent in March, 1973, from an amniotic fluid embolism following the otherwise normal birth of the decedent's child. Plaintiff alleges malpractice on the part of defendant doctor on the basis of the failure to have an "i.v." in place during the use of a spinal-block anesthesia. Briefly, plaintiff has experts willing to testify that an i.v. should have been in place prior to the administration of the anesthesia and that, had the i.v. been in place, there would have been a 37.5 percent probability that the decedent's life could have been saved when the embolism arose. Absent the i.v., plaintiff's experts opine that there was zero chance of saving the decedent.

Plaintiff commenced this action in August, 1973. The third-party complaint was filed against Denny,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

who was the attending nurse-anesthetist whose responsibility it was to monitor the patient while the patient was under the anesthetic. For reasons not apparent to us, trial did not commence until January 7, 1985. Part way through trial, the trial court granted a directed verdict in favor of defendants Memorial Hospital and Kelso, having ruled that plaintiff's experts were not qualified to testify and that plaintiff had therefore failed to present competent expert testimony as to the standard of care. The order granting the directed verdict also stated that the third-party complaint and cross-complaint were dismissed without costs.

Plaintiff appealed the directed verdict, but defendant hospital did not pursue a cross appeal of the dismissal of its claims against defendant Denny. This Court reversed, concluding that the trial court erred in granting a directed verdict in favor of defendants. *Falcon v Memorial Hosp,* unpublished opinion per curiam, decided August 12, 1986 (Docket No. 83193).

On remand, defendants moved for summary disposition on the basis that plaintiff had insufficient evidence to raise a jury question on the issue of proximate cause. The trial court granted the motion, concluding that Michigan does not recognize the "value of lost chance" doctrine and that, under the wrongful death act, plaintiff would have to prove that the wrongful acts or omissions of the physician were the cause of the decedent's death and plaintiff could only prove that defendants caused her to lose a 37.5 percent chance at life, not that defendant's acts or omissions caused her death. We disagree.

At least for purposes of this appeal, the parties are in agreement as to the basic facts of this case: that plaintiff's decedent died during childbirth as a result of an amniotic fluid embolism, that plaintiff

could offer expert testimony which would opine that the decedent would have had a 37.5 percent chance of survival had an i.v. been established prior to the administration of the anesthetic and that the standard of care requires the use of an i.v. in conjunction with the type of anesthetic administered to the decedent, and that no such i.v. had been in place, resulting in the decedent's having zero chance of survival according to plaintiff's experts. Thus, the question for our consideration is whether the failure to establish the i.v., thus reducing the decedent's chance of survival from 37.5 percent to zero, could be found by a rational trier of fact to be a proximate cause of the decedent's death. We conclude that the trial court erred in granting summary disposition and that the issue of proximate cause should have been submitted to the jury.

First, although the parties in the trial court frame this case as being one involving the value of lost chance, we are not convinced that this case truly falls within that doctrine. Generally, the value of lost chance involves a situation where a physician fails to perform a particular treatment, often, though not necessarily, a result of a failure to timely achieve the proper diagnosis. See *Vitale v Reddy,* 150 Mich App 492, 502; 389 NW2d 456 (1986), vacated on other grounds 430 Mich 894; 425 NW2d 89 (1988). In the case at bar, the attending physician's alleged act of malpractice does not arise from the failure to pursue a particular treatment so much as it arises from the physician's failure to properly perform the procedure involved, the delivery of the baby while using a spinal-block anesthetic. In any event, the proper labeling of plaintiff's claim does not affect the legal analysis and we leave it for academicians to affix the label.

The question before us is whether, under Michi-

gan law, a plaintiff in a medical malpractice case can establish proximate cause where the alleged act of malpractice involves an omission by the physician and the plaintiff can establish that, but for the omission, the patient had a better chance of survival, but the plaintiff cannot establish that, but for the omission, the patient would have survived or was even more likely than not to have survived. We believe that the trier of fact could conclude in the case at bar that the plaintiff has established proximate cause.

Our analysis begins with the Supreme Court's decision in *Rogers v Kee,* 171 Mich 551; 137 NW 260 (1912). In *Rogers,* the alleged act of malpractice was the failure to properly diagnose a fracture of the neck of the left femur and unskillful and negligent treatment of that fracture. The plaintiff presented evidence which suggested that, under a proper diagnosis and treatment, a better recovery from the injury would have occurred. The *Rogers* Court, *supra* at 561-563, discussed the obligations of a treating physician:

> These excerpts illustrate the nature of the testimony given by the various physicians relative to proper treatment of such an injury. Such testimony imports clearly that a patient suffering from such an injury, on calling a physician, is entitled to approved methods of treatment from which experience of the profession indicates beneficial results are probable and to be anticipated; and, if not an entire recovery, a better ultimate condition than if left to chance. If so, can it not be legitimately inferred by a jury that plaintiff, a strong man, who, untreated and with his recovery left to chance, "shows as good results as would ordinarily obtain in a patient of his age under skillful treatment," if properly and skillfully treated would, in all probability, have a better recovery and be in yet better condition? We think such testimony

presents an issue of fact for the jury—on probability, it is true. The issues of sickness and healing, life and death, are too uncertain to be otherwise forecast, but negligence which deprives a man of such probability is more than *injuria sine damno.*

What would constitute an injury to the plaintiff in an action like the present has been thus defined:

"Any want of the proper degree of skill or care which diminishes the chances of the patient's recovery, prolongs his illness, increases his suffering, or, in short, makes his condition worse than it would have been if due skill and care had been used, would, in a legal sense, constitute injury." *Craig v Chambers,* 17 Ohio St 253 [1867].

\* \* \*

. . . Until the learned experts testify that no treatment would avail or be beneficial, that no better results are probable with treatment than without—in other words, that a physician is useless in such a case (and they have not so testified here)—we think such facts present an issue for the jury.

Admittedly, the *Rogers* Court does refer to the "probability" of recovery and better results being more "probable" with treatment than without, upon which defendants base their argument that for plaintiff to recover she must show that survival was more likely than not with the use of the omitted procedure than without the procedure; however, the Court's quotation from *Craig* and its reference to a physician's being useless suggests, as plaintiff urges, a more sweeping concept of the physician's being liable whenever his omission results in the patient's condition or chances of recovery being diminished. The difficulty of applying the *Rogers* decision to the case at bar is that *Rogers* did not involve a death. In a nonfatal injury, there can be many gradations in the level

of improved recovery through the use of the proper diagnosis and treatment. That is, with the proper diagnosis and treatment there can be a very likely chance of a slight improvement in the condition as well as a slim chance of a complete recovery, as well as many degrees of likelihood and levels of recovery in between. Death, on the other hand, is a quantum event. The patient either lives or dies. Recovery, to this extent, is either complete or nonexistent. There are no gradations. The concept of the "probability of a better result" takes on a significantly different meaning in a case involving death as contrasted to a case involving a nonfatal injury or disease. This, then, brings us to the case of *Harvey v Silber,* 300 Mich 510; 2 NW2d 483 (1942), wherein the patient died.

In *Harvey,* the decedent suffered a gunshot wound. The act of malpractice involved a misdiagnosis of the location of the bullet, resulting in the attending physician's failing to perform an operation which might have saved the patient's life. In determining whether the physician's negligent diagnosis constituted a proximate cause of the patient's death, the *Harvey* Court, *supra* at 520, opined as follows:

> Since the medical experts agreed that Harvey was almost certain to die unless an operation was performed, the jury could properly infer that Doctor Friedlaender would have operated if he had known the true position of the bullet. The negligent diagnosis then was the proximate cause of the failure to operate. There is testimony in the record that there was *a probability* that an operation would have saved Harvey's life. Therefore the negligent diagnosis could be said to have been the proximate cause of the death. See *Lippold v Kidd,* [126 Or 160; 269 P 210; 59 ALR 875 (1928)], and annotated cases, p 884 *et seq.,* to the effect that

proof of "probability" is sufficient. [Emphasis added.]

Defendants point to the Supreme Court's use of the word "probability" in support of their theory that it must be shown that recovery was more likely than not with the use of the omitted procedure. The only testimony specifically quoted by the Harvey Court addressing the issue of the patient's chances of survival was the following:

> Plaintiff produced as an expert, Dr. Maxim P. Melnik, who testified that:
> "The usual and standard practice in this community or similar communities of ordinary surgeons and physicians is to have immediate surgical intervention, that is, operation, in order to check any bleeding or hemorrhage caused by the wound. . . . as I said; the operation is the only thing that stops the hemorrhage, and by stopping the hemorrhage one has a chance to save one's life. . . . The *probability* is that his life could have been saved by immediate operation when the patient was in fairly good condition, *was fairly good.*" [*Id.* at 516; emphasis added.]

We note that the expert did not testify that the operation would have saved the patient's life or even that it was more likely than not that the patient would have survived had the operation been performed. Rather, the expert opined that the probability of saving the patient's life with the operation was "fairly good." Whether that expert would equate "fairly good" with "more likely than not" is, at best, speculative. More importantly, we think this demonstrates that defendants' focusing on the Supreme Court's use of words such as "probable" and "probability," at the expense of the remainder of the opinions, have caused defendants to reach a tenuous conclusion. That is, unlike

defendants, we do not believe the Supreme Court decisions in *Rogers, supra,* and *Harvey, supra,* establish the principle that a plaintiff must show recovery was more likely than not with use of the omitted treatment or procedure.

At the risk of repeating defendants' error in exalting the semantics of the Supreme Court's opinions over the substance of those decisions, we note that, while the word "probability" can be used to indicate that an event is more likely than not to happen, it also refers to the relative chances of an event happening, whether that "probability" be low or high. See "probability," *Random House College Dictionary* (revised ed, 1984), p 1055; see also "probability," Black's Law Dictionary (5th ed), p 1081. The Supreme Court's sweeping statements in *Rogers* to the effect of holding a physician liable where his omissions worsened a patient's condition or diminished the patient's chances for recovery and its reliance in *Harvey, supra,* on testimony that the operation would have given the patient a fairly good chance of survival indicate to us that the Supreme Court did not, nor did it intend to, establish any "more likely than not" test for determining whether a physician's omission is a proximate cause of the patient's death or injury. Rather, we believe the Court's references to the probability of recovery establish not a mathematical threshold that a plaintiff must meet, but address the requirement that there must be some reason for the physician to have performed the procedure in the first place. That is, where a plaintiff alleges an omission by a physician, the plaintiff must establish that the omitted treatment or procedure had the potential for improving the patient's recovery or preventing the patient's death. Simply put, while a plaintiff must show some probability that the treatment would be

successful, that probability need not be greater than fifty percent.

We caution, however, that our decision does not create strict liability for physicians who fail to perform a specific procedure or treatment. That is, a plaintiff is not entitled to recovery as a matter of law merely because the physician failed to perform some procedure or treatment that could have had some minuscule possibility of improving the patient's condition or saving the patient's life. Rather, the jury must determine whether, under the applicable standard of care, the physician should have performed the omitted procedure or treatment. Where the omission does not breach the standard of care, the plaintiff simply cannot recover.

With respect to this Court's decision in *Vitale, supra,* upon which defendants rely, to the extent that that decision is inconsistent with our decision in this case, we disagree with our colleagues in *Vitale.*

We now turn to the issue raised on cross appeal; namely, whether the trial court erred in denying third-party defendant Denny's motion to amend her pleadings to reflect that she was no longer a party to the action. The trial court concluded that Denny was automatically reinstated as a party following the original appeal because the cross-claim had been dismissed "by operation of law" following the original directed verdict. We disagree. Since defendant hospital did not claim a cross appeal at the time of the prior appeal, the disposition as to Denny now represents a final resolution of the matter on which no appeal was claimed. Accordingly, the claim as to Denny may not now be relitigated. See *Whinnen v 231 Corp,* 49 Mich App 371, 378-379; 212 NW2d 297 (1973).

Finally, we decline plaintiff's request to order

the appointment of a new judge. However, as did the panel before us, we direct the trial court to give the matter priority over all other civil cases filed subsequent to August 28, 1973, the date this suit was filed, even if reassignment to another judge is necessary. The trial court may wish to request the appointment of a visiting judge to ensure a speedy resolution of this matter.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff and third-party defendant Denny may tax costs.