**Mickey Richard ROSSI, Plaintiff,**

v.

**HARRIS/3M DOCUMENT PRODUCTS, INC., Defendant.**

**Civ. A. No. 89–CV–72133–DT.**

United States District Court,
E.D. Michigan, S.D.

July 3, 1990.

L. Eugene Hunt, Jr., Hunt and Associates, Dearborn, Mich., for plaintiff.

Thomas G. Kienbaum, David Deromedi, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, District Judge.

This matter is presently before the court on defendant's May 25, 1990, motion for summary judgment. Plaintiff has filed a response. Pursuant to Local Rule 17(*l*)(2) of the United States District Court for the Eastern District of Michigan, the court shall decide this motion without a hearing.

Plaintiff worked for defendant for several years as a copier service technician. Plaintiff alleges in Count I of his complaint that on September 25, 1986, defendant discharged him without just cause, in violation of his written and oral employment contract. Count II of the complaint, which asserts an age discrimination claim, has been dismissed with prejudice by stipulation of the parties. Accordingly, only Count I remains.

*Summary Judgment Standard*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

In responding to a properly supported summary judgment motion, the burden is on the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact."[1] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), summary judgment should be entered if the evidence is such that a reasonable fact-finder could not find for the non-moving party. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478–80 (6th Cir.1989). The court must apply these standards in deciding defendant's motion.

*Analysis*

Defendant first argues that plaintiff was an at-will employee, who could be terminated at any time. Defendant points to paragraph 9 of the written employment contract between the parties (Exhibit A), which states:

> This agreement may be terminated by either party at any time by giving notice of the intention to exercise such right to the other party, and thereafter the Employee's employment hereunder shall be terminated....

Plaintiff notes in his response, however, that paragraph 8 of the written contract incorporated a "company policy manual." Defendant's district manager, Douglas Brierley, testified at pages 39 and 47 of his deposition that the company's policy, as expressed in this manual, is to discharge employees only for cause. For purposes of deciding the instant motion, the court shall therefore assume that plaintiff was not an "at-will" employee, and that defendant could discharge him only for cause.[2] Thus, the issue is whether there is a genuine factual dispute as to whether plaintiff was discharged for cause.

Chapter C, section 1 of defendant's policy manual (Exhibit C of defendant's motion; Exhibit B of plaintiff's response) discusses the company's policy regarding employee discipline. The relevant paragraphs state:

GUIDELINES

A. Major Infractions

1. Certain violations are of a serious nature and preclude the application of normal steps of progressive discipline.

2. According to the circumstances, infractions of this type will result in the imposition of an appropriate level of discipline up to and including termination.

1. In *Liberty Lobby,* the Supreme Court defined a "genuine" dispute as one which must be resolved by the fact-finder at trial because, based on the evidence submitted by both parties, "a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. Thus, a dispute is not "genuine" if the evidence is such that, were the matter to proceed to trial, the party seeking summary judgment would be entitled to a directed verdict. *Id.,* 477 U.S. at 250, 106 S.Ct. at 2511.

A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Consequently, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.,*

*citing* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725, pp. 93–95 (1983).

2. In *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 610, 292 N.W.2d 880 (1980), the Michigan Supreme Court held that a "for cause" employment contract is enforceable, and that such a contract can be created "as a result of an employee's legitimate expectations grounded in an employer's policy statements." *See also Dzierwa v. Michigan Oil Company,* 152 Mich.App. 281, 393 N.W.2d 610 (1986); *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 308 N.W.2d 459 (1981).

3. Some, but not all, examples of major infractions include:

 a. Defrauding or attempting to defraud the company, including falsification of company records.

 \* \* \* \* \* \*

4. In any of the above instances, the appropriate Regional Manager should be contacted immediately.

B. Minor Infractions

 1. Isolated cases of inappropriate performance or behavior should be dealt with as a normal part of the employee/supervisor relationship.

 \* \* \* \* \* \*

DISCIPLINARY ACTION PROCEDURES

A. Progressive discipline, as described below, will apply to full time employees who have demonstrated, at least initially, rudimentary ability to perform job tasks and responsibilities.

The "Disciplinary Action Procedures" section outlines four disciplinary "steps," beginning with counseling and proceeding through written warnings to, finally, termination.

 Defendant argues that it was justified in discharging plaintiff because he was caught falsifying his time records. Plaintiff's regional manager, Douglas Brierley, testified that plaintiff was required to telephone the company dispatcher each day to indicate when he had arrived, and when he was leaving, a customer's office. Plaintiff was also required to indicate these times on a Service Rep Daily Activities Report, or time sheet. According to Brierley, the dispatcher discovered that plaintiff "was not where he said he was." Brierley testified further that he and plaintiff's immediate supervisor, Stanley Bojanowski,

> thought it would be in our—everybody's best interest if we called and tried to find Mick, which we couldn't.

 \* \* \* \* \* \*

> We then decided that we should monitor the next couple days, to see if in fact

Mick was where he said he was at the time that he said he was at those locations.

> And throughout this three day period of monitoring, we found out that he was not. . . .

Stanley Bojanowski testified at his deposition that on September 22, 1986, he discovered that plaintiff "was leaving work early and reporting his time through 5 o'clock." Bojanowski also testified that the next day the dispatcher told him that plaintiff indicated he had worked until 5:00 p.m., while the customer said he had finished working at 3:00 p.m.

Brierley testified that plaintiff was confronted with this alleged falsification at a meeting with Brierley, Bojanowski, Tom Cook (a "manager"), and another company official, Will Fleck:

> We brought Mick in and we confronted Mick with the problems that we had uncovered, and asked him for an explanation of the problems, and at that particular point in time Mick had no explanation.

> Later on it came out in the hearing[3] that he had an impaired driver's license. Obviously if he brought that up to us at that time or prior to that time, we could have worked something out with him, but he even at that particular point in time, he chose not to not to [sic] even share that with us. He gave us basically no explanation for his wrongdoings.

> \* \* \* \* \* \*

> I'm basically, what I'm saying is that, given the opportunity to explain his actions, he was not honest with us. And we explained to him the severity of the situation, and . . . we asked him to "please, if do you have anything that you'd like to tell us regarding why this happened, anything that you'd like to explain to us, we're more than willing to listen."

Defendant has also submitted photocopies of plaintiff's time records from September 22–24, 1986, with handwritten notes

---

3. Plaintiff's counsel indicates in his response brief that, following plaintiff's discharge, a hearing was held before the Michigan Employment Security Commission Review Board to determine his eligibility for unemployment benefits.

indicating that plaintiff had worked three "accounts" until 3:00 or 4:00 p.m., but had reported working until 5:00 p.m.

Defendant argues that it was justified in discharging plaintiff because he was caught falsifying his time records and offered no explanation when confronted. Defendant notes that such employee behavior is one of the "major infractions" listed in the company handbook, and that no progressive disciplinary measures need be followed when an employee engages in misconduct of this kind.

Defendant cites *Loftis v. G.T. Products, Inc.*, 167 Mich.App. 787, 423 N.W.2d 358 (1988). In *Loftis*, plaintiff was discharged after failing to appear for work on two Saturday overtime shifts. Plaintiff argued that his employer should not have terminated him summarily, but should have given him the benefit of a four-step disciplinary procedure outlined in the employee handbook. The trial court denied defendant's motion for summary disposition.

The Michigan Court of Appeals reversed. The appeals court noted that section 18 of the handbook did call for progressive disciplinary procedures "for infractions such as improper work procedures, poor attendance, tardiness and unacceptable work habits." Yet section 19 of the handbook indicated that certain misconduct, including "failure or refusal to work overtime as instructed by supervision," would "be cause for immediate discharge." The Court of Appeals stated:

> [T]he effect of reading § 18 and § 19 together gives the company total discretion to decide when it will use the graduated § 18 disciplinary procedure and when it will fire an employee on the spot pursuant to § 19.... [P]laintiff, on reading § 19, must know that this provision gives defendant that right. The clear meaning of § 19 is that termination can result from failure to work overtime.

*Id.*, 167 Mich.App. at 793, 423 N.W.2d 358.

The present case is indistinguishable from *Loftis*. As in *Loftis*, the employee handbook here provided for a system of progressive employee discipline. Yet just as in *Loftis*, the handbook here also indi-

cated that certain types of misconduct "will result in the imposition of an appropriate level of discipline up to and including termination." This language undermines any suggestion that defendant was contractually bound to follow the four-step disciplinary procedure in plaintiff's case, since plaintiff was charged with one of the listed "major infractions." Indeed, section (A)(1) of the "Disciplinary Action Guidelines" specifically stated that such major misconduct, including falsification of company records, *"preclude the application of normal steps of progressive discipline"* (emphasis added). Consequently, plaintiff cannot contend that he had a contractual right to progressive discipline, as opposed to summary termination.

Plaintiff's counsel also argues that plaintiff did not actually falsify his time records, but " 'juggle[d]' the times so that the documentation would reflect a lunch taken at the proper time." Plaintiff's counsel asserts that "Defendant was comfortable with this and, in fact, encouraged this as long as employees worked an 8 hour day and properly charged customers for the amount of time spent at their business."

No evidence is offered to show that this was a company practice, or that plaintiff acted in reliance on such a practice. Plaintiff's only support is one page from a co-worker's deposition, who testified that employees were expected to take their lunch hour sometime between 11:00 a.m. and 2:00 p.m., and that "I was told that I always had to document lunch time whether I took it or not." Whatever relevance this argument may have, the co-worker's deposition testimony does not show that plaintiff was "juggling" his time records at the request of, or with the knowledge, acquiescence, or encouragement of, his employer. Nor does it in any way suggest that plaintiff was not falsifying his records. By offering nothing more than assertions of counsel, and a single page of deposition testimony with little or no relevance, plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Finally, plaintiff argues that he had good reason to falsify his time records. Plaintiff states that he had been arrested for drunk driving, and that a judge had restricted his driving to between 7:00 a.m. and 4:00 p.m. Plaintiff indicates that he had to stop working at 3:30 p.m. in order to be home and off the road by 4:00 p.m. Plaintiff asserts that he was nonetheless putting in an 8–hour day by "working from 7:30 a.m. to 3:30 p.m. with no lunch." Counsel asserts that

> Plaintiff was virtually blind-sided and reacted poorly. Plaintiff may be guilty of misjudging the severity of this meeting, but he felt sure, if disclosed, his arrest would adversely affect his position with the company.... At best, Defendant can point to Plaintiff's misrepresentations of time but plainly this is a gray area for the company and its employees. Thus, under the circumstances, Plaintiff's failure to notify his employer of his restricted license and his subsequent misrepresentations constituted a good-faith error in discretion.

The issue is not whether plaintiff made a "error in discretion." The issue is whether there is a genuine factual dispute as to whether defendant had cause to believe that plaintiff had falsified his time records. Plaintiff admits in his response brief that he "misrepresented" his time records, and that he did not explain his apparent misconduct when confronted by his employer. At his deposition, plaintiff testified that he "wasn't taking from them, I was just creatively changing my hours" in order to be home within the time period allowed under his restricted license.

On this record, the court does not believe a reasonable jury could find that plaintiff was discharged other than for cause. The employee handbook clearly states that an employee may be discharged summarily for falsifying company records. Plaintiff has admitted that he misrepresented his work hours. While plaintiff now states that he had good reasons for doing so, he also admits that he did not inform his employer of these reasons. Defendant cannot be faulted for failing to consider explanations which plaintiff kept to himself.

For all of the reasons stated above, the court finds that plaintiff has failed to present evidence from which a reasonable jury could find in his favor on his breach of contract claim. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

SO ORDERED.