946 F.2d 894
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas C. CHARLES, Plaintiff-Appellant,
v.
PITNEY BOWES, INC., and Gary J. Trombley, Defendants-Appellees.
 No. 90-2344.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1991.
 
 Before RALPH B. GUY, Jr., Circuit Judge, JOHN W. PECK, Senior Circuit Judge, and SILER,* Chief District Judge.
 PER CURIAM.
 
 
 1
 This appeal arises from the district court's grant of summary judgment to Pitney Bowes and Gary J. Trombley on the grounds that there was just cause to discharge the Appellant. For the reasons stated below, we affirm.
 
 FACTS
 
 2
 Appellant Thomas Charles was a sales representative for Appellee Pitney Bowes. Appellee Gary J. Trombley was his supervisor. On July 14, 1986, the day he was hired, Charles signed a document indicating: "I have read, fully understand, and acknowledge that continuing employment with Pitney Bowes is dependent upon strict adherence to [The Standards of Professionalism at Pitney Bowes]." The specific Standards of Professionalism included the following:
 
 
 3
 Make certain that your prospects/customers are aware that we offer a variety of acquisition plans for our equipment--lease, purchase, and rent.
 
 
 4
 .... Failure to fully explain the terms of the lease to the customer is both unprofessional and a violation of our selling code of ethics.
 
 
 5
 The customer must always understand the exact term of the lease and the selling price of the equipment.
 
 
 6
 When recommending a replacement lease for equipment that is currently under a lease, make certain that the customer is aware of all other options.... Point out to the customer that, when trading part, but not all, of an existing lease, the customer will have two leases and two payments.
 
 
 7
 Represent Company products and services and their prices fully and accurately; i.e., according to the PB price book, making sure the customer thoroughly understands both his and the Company's obligations under the terms of any contracts.
 
 
 8
 On October 28, 1988, Trombley met with Charles to address a customer complaint from Detroit Edison Employees Credit Union alleging that Charles had used a fraudulent method to secure an equipment lease. Charles signed the disciplinary form summarizing the relevant events and entered "no comment" in the section provided for employee comments. At this meeting Charles again signed a document acknowledging that he had read and fully understood the Standards of Professionalism and that continued employment was contingent upon adherence to the standards.
 
 
 9
 In November 1988, Charles informed Trombley that a customer, PMC, wished to purchase a new system. Because PMC would have been obligated to continue payments for a similar system under a prior lease agreement, Trombley investigated the situation. PMC reported that it was not aware of the continuing obligation under the old lease. On December 27, 1988, Trombley terminated Charles for violating the Standards of Professionalism by failing to assure that PMC understood its continuing obligation to Pitney Bowes.
 
 ANALYSIS
 
 10
 Appellant claims that he was terminated without just cause in violation of an employment contract. In the district court Pitney Bowes argued that even if there was an employment contract, it did not breach that contract because Charles was terminated as a result of his violation of specific employment standards. For purposes of this decision it will be assumed that appellant was not an at-will employee, and that appellee could discharge him only for cause.
 
 
 11
 The district judge based his decision on Rossi v. Harris 3/M Document Products, Incorporated, 741 F.Supp. 132 (E.D.Mich.1990), in which the court, applying Michigan law, granted summary judgment to the employer in a wrongful discharge action. In Rossi, the employer's policy manual stated that termination could result from a violation of certain standards, including falsification of company records. The plaintiff was discharged for falsifying his time records. The district court found that the plaintiff had failed to present evidence from which a reasonable jury could find in his favor. Thus there was no genuine factual dispute as to whether plaintiff was discharged other than for cause.
 
 
 12
 Appellant argues that Rossi is distinguishable from the present case because here there is a dispute as to any wrongdoing. Charles has denied any wrongdoing and instead, asserts that he explained the lease and purchase terms and obligations to PMC personnel on three different occasions.
 
 
 13
 The issue is not whether Charles explained the terms of the agreement, but whether there is a genuine factual dispute as to the effectiveness of the explanation. It was the fact that the customer did not understand the terms of the lease and the purchase that resulted in Charles' termination. The Standard of Professionalism clearly state that "[t]he customer must always understand the exact term of the lease and the selling price of the equipment." The Supreme Court of Michigan has recognized that:
 
 
 14
 ... [employers] must be permitted to establish their own standards for job performance and to dismiss for non-adherence to those standards although another employer or the jury might have established lower standards.
 
 
 15
 An employer who agrees to discharge only for cause need not lower its standard of performance.
 
 
 16
 Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 623-24, 292 N.W.2d 880, 897 (1980).
 
 
 17
 Pitney Bowes established performance standards that were based entirely upon the customer's state of mind. This is a very high standard. However, on at least two occasions Charles indicated that he fully understood the standards and that he was aware that his employment was contingent upon adherence to the standards.
 
 
 18
 Appellant Charles offered no deposition testimony, affidavits or other evidence that would create a material issue of fact as to whether PMC understood the term of the lease. Instead, the deposition evidence filed in support of the summary judgment motion indicated that PMC did not understand its obligations. This lack of understanding necessarily established a violation of appellant's obligation under Pitney Bowes' Standards of Professionalism and was the cause of appellant's termination. Appellant has failed to demonstrate that a genuine issue of material fact exists.
 
 
 19
 Accordingly, the order of the district court granting summary judgment for the defendants is AFFIRMED.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation, became a Circuit Judge on September 16, 1991