**Donald E. HATFIELD, Plaintiff,**

v.

**JOHNSON CONTROLS, INC., Defendant.**

**Civ. A. No. 91–CV–40029–FL.**

United States District Court, E.D. Michigan, S.D. at Flint.

May 5, 1992.

Charles C. DeWitt, Jr., Bruce G. Davis, Ann Arbor, Mich., for defendant.

James F. Graves, East Lansing, Mich., for plaintiff.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I.

Before the Court is the plaintiff's Motion for Reconsideration. This is the third time that this Court has reviewed the merits of the defendant's request for summary judgment in this wrongful discharge case that is based on *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). The plaintiff was terminated after twice being caught smoking in restricted areas of the plant in violation of the employer's health and safety rules. The plaintiff argued that the progressive disciplinary procedures provided in the employee handbook, when not accompanied by a written disclaimer of a just-cause relationship, created an employment contract under which he could be terminated for just cause only. The defendant disputed with legal arguments the existence of a just-cause contract, and argued that the violation of its rules provided the employer with just cause to terminate the plaintiff.

In the defendant's first motion for summary judgment, the Court found issues of fact regarding the existence of a just-cause contract. It also held that there was an issue of fact whether the defendant selectively enforced its health and safety rules, thereby creating an issue of fact whether just cause existed for the termination. The Court denied summary judgment therefor.

The defendant subsequently renewed its motion based on additional case law. In the first part of the Opinion disposing of the renewed motion for summary judgment, the Court carefully reviewed and reaffirmed its determination that there was an issue of fact regarding the existence of a just-cause contract. The Court determined, however, that the plaintiff could not show that similarly situated employees received dissimilar treatment. He had failed to raise an issue of fact regarding the alleged selective enforcement of the smoking ban. There being no other challenge to the existence of just cause for the discharge, it was determined that just cause existed for the termination. I acknowledged that this conclusion made the finding of an issue of fact regarding the existence of a just-cause contract dicta. "Having concluded that there is no issue of fact as to the existence of just cause for the plaintiff's discharge, my labors as to the existence of a just-cause contract are for naught." Memorandum Opinion and Order, February 3, 1992, at 11, 1992 WL 178746. Summary judgment was granted.

The plaintiff quickly responded with the present motion for reconsideration. The Court permitted the defendant to file a brief in response to the motion. Based on a review of Michigan and Sixth Circuit cases, and the arguments of counsel contained in the briefs, the Court herein decides to reaffirm its granting of summary

judgment, albeit upon significantly different grounds.

## II.

■ One of the plaintiff's arguments for reconsideration involves the issue of selective enforcement. The Court has concluded that the plaintiff has failed to meet the defendant's factual showing that no other supervisors have been observed violating the smoking ban by other supervisors who possess the power to discipline. Thus the plaintiff has failed to demonstrate that similarly situated people engaging in similar conduct have received dissimilar disciplinary treatment. This conclusion defeated the plaintiff's claim of selective enforcement, and led to a finding that just cause existed for the plaintiff's discharge.

For the reasons stated in the February 3, 1992 Opinion, it is immaterial whether supervisors have been witnessed, by the plaintiff or any other employee, smoking in restricted areas of the plant, unless the supervisors' infractions were observed by another supervisor "possessed with the power to discharge [that supervisor]." Memorandum Opinion and Order, February 3, 1992, at 10. The plaintiff was observed by *his* supervisors smoking in a restricted area. No other supervisory employees had been observed by their supervisors engaging in similar conduct.

Other supervisors allegedly had been observed eating in violation of the same health and safety rules. In the prior Opinion, the Court held that this conduct was not similar to the plaintiff's smoking and could not support a selective enforcement allegation. In his motion for reconsideration, the plaintiff objects to distinguishing between the policy banning eating in restricted areas and the policy banning smoking. He challenges the qualifications of Timothy Martz and Ronald Modrzynski, Johnson Control employees, as experts in industrial toxicology. These witnesses testified that violations of the smoking ban are more serious infractions because of the increased health risks involved.

Whether Martz and Modrzynski are qualified as experts or not, their testimony has been rebutted only by the plaintiff's own opinion that he doesn't think much of the validity of the health risk. Hatfield Deposition, at 79–80. Still, the plaintiff stated in his deposition that he had no reason to doubt the scientific basis for the hygiene policies. Hatfield Deposition, at 80–81. Regardless of the expert qualifications of Martz and Modrzynski, their testimony has not been meaningfully rebutted. I conclude that there is no factual dispute that smoking in restricted areas of the plant creates a greater health risk than eating in the same areas. Supervisors caught eating in restricted areas are not similarly situated to supervisors caught smoking. The failure to discharge supervisors caught eating in restricted areas can not make the termination of the plaintiff for smoking in those areas a case of selective enforcement.

The plaintiff's argument also ignores the fact that the health risk was not the only basis for considering violation of the smoking ban a more serious infraction. While Johnson Controls claims that it bans smoking in certain areas of its plants to reduce the risks to its employees' health from lead contamination, it also claims that the presence of smoke in these areas contaminates its lead. There is also testimony about the increased risk of fire. Whether the defendant's concerns for its employees' health is valid or not, it can justifiably be concerned about contamination of its products, and the risk of fire. It can distinguish between conduct which poses greater or lesser risks in these ways. While the plaintiff offers his opinion that the health risks are negligible, he ignores the defendant's fire and contamination concerns. These bases for distinguishing between the eating and smoking bans also remain unrebutted. There is no issue of fact, then, that supervisors caught eating are not similarly situated to supervisors caught smoking. Dissimilar treatment of the supervisors cannot support a claim of selective enforcement.

This effectively finishes the plaintiff's claim that the violation of the smoking ban cannot provide just cause for his termi-

nation because the ban was selectively enforced.[1]

### III.

The plaintiff's failure to raise a genuine issue of fact that the smoking ban was selectively enforced is not dispositive of his wrongful discharge claim. The plaintiff argues that a determination of the existence of just cause for the discharge is a factual question requiring the jury's consideration of other factors such as years of service, age and proximity of retirement, promotions, the isolated nature of the infractions, and job stress. Selective enforcement is merely one factor for consideration in determining whether there was just cause for the discharge. So the fact that the Court has determined that the plaintiff cannot defeat the "just-cause" defense with a charge of selective enforcement does not preclude consideration by a jury of other circumstances which might establish the non-existence of just cause.

The facts of this case raise a difficult issue for *Toussaint*-type claims. In order finally to dispose of the defendant's request for summary judgment, the Court must ascertain whether an employer's exercise of discretion in determining the existence of just cause for discharge of an employee is subject to a jury's review when the terms of employment explicitly provide the employer with a choice to discharge the employee or to impose some less severe discipline. To put it another way, the issue in this case appears to be whether summary judgment is precluded by the existence of a genuine issue of fact whether the employer has just cause for termination when the express policy violated by the employee carries a variable level of discipline ranging from warning all the way up to immediate discharge.

In the case at bar, the employee handbook expressly provides that the seriousness of certain conduct, including "Violation of health and/or safety rules" and "Smoking in other than designated areas approved for smoking," can "vary significantly in any individual situation ... depending upon the seriousness of the offense," and therefore, the applicable corrective action procedure can range from an eight-step procedure comprised of warnings, suspensions and ultimate discharge for repeated offenses, to immediate discharge for the first offense. *See* Employees Guide, at 6–8 (attached as Exhibit E to Defendant's Brief in Support of Original Motion for Summary Judgment). The plaintiff, a supervisor, was caught violating the health and safety policy twice by smoking in restricted areas of the defendant's plant. Under the terms of the employee handbook, then, the defendant could engage the eight-step procedure, or discharge the plaintiff immediately. The first time the plaintiff was caught smoking, he was warned. The second time, he was terminated. The handbook plainly gives the employer discretion in disciplining such infractions. The question for this Court to determine is whether the employer's exercise of that discretion is subject to review by a jury to determine whether just cause actually existed for the termination.

### A.

The plaintiff argues that *Toussaint* requires a determination of the existence of just cause to be made by a jury.

The plaintiff also faults the Court for making a determination of Lloyd Williams' credibility. The Court has done no such thing. While Williams has never witnessed a supervisor violating the smoking ban, thus establishing the fact of a dissimilar situation, the plaintiff has failed to answer Williams' allegation to create an issue of fact that similar employees, engaging in similar conduct, received dissimilar treatment.

---

1. The plaintiff attacked this Court's disposition of his selective enforcement claim on two other grounds. These grounds require only a brief response by the Court. The Court did not rely upon *Cox v. General Motors Corp.*, unpublished per curiam opinion, no. 108556. The February 3, 1992 Opinion expresses the Court's belief "that *Cox* merely reiterates the 'similarly situated' requirement" that was applied to the plaintiff's claim of selective enforcement. The plaintiff's argument that the Court erred in following an unpublished case is baseless. Memorandum Opinion and Order, February 3, 1992.

In addition to deciding questions of fact and determining the employer's true motive for discharge, the jury should, where such a promise was made, decide whether the reason for discharge amounts to good cause: is it the kind of thing that justifies terminating the employment relationship? Does it demonstrate that the employee was no longer doing the job?

*Toussaint*, 408 Mich. 579, 623, 292 N.W.2d 880, 896 (1980). As stated above, the plaintiff argues that a determination of the existence of just cause for the discharge requires a jury's consideration of other factors such as years of service, age and proximity of retirement, promotions, the isolated nature of the infractions, and job stress. In other words, the issue of the existence of just cause for the discharge, under Michigan law, is always a jury issue, and never appropriate for summary disposition.

■ It is clear that the Court has the power to grant summary judgment on the issue of the existence of just cause in a *Toussaint* case, even if the Michigan Supreme Court stated that the existence of just cause is a jury question. In *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986), the plaintiff argued that summary judgment was granted to the defendant improvidently because Michigan law would have required the denial of the motion for summary judgment. The court rejected the argument.

> This argument fails to recognize the difference between procedural rules and substantive law. The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether the jurisdiction is based on federal question or diversity of citizenship. Summary judgment is a procedural device for deciding a case without the necessity of a full-blown trial. When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination.

*Id.* at 459. The defendant argues for similar treatment of this case. Defendant's Brief in Opposition to Motion for Reconsideration, at 2.

While *Reid* recognizes that the procedural rules of the federal courts, and Rule 56 is such a procedural rule, control procedural questions in diversity cases in federal court, Rule 56 requires that there be an absence of genuine issues of fact. The genuine nature of a factual issue must be determined by the substantive law to be applied. Indeed, in *Bichler v. Union Bank & Trust Co. of Grand Rapids*, 745 F.2d 1006 (6th Cir.1984), it was the absence of any facts to show the defendant acted with knowledge of the falsity of its report that justified summary judgment in that libel case, even though Michigan law made the existence of malice a question for the jury. *Id.* at 1015. And in *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453 (6th Cir.1991), there was no question of fact regarding the existence of just cause. "The falsification of expense account records is a serious breach of responsibility on the part of an employee and constitutes just cause for termination." *Id.* at 455. In this wrongful discharge diversity case, the substantive law that determines which facts are relevant for purposes of summary disposition is supplied by Michigan case law.

The Michigan Supreme Court has made it reasonably clear that the existence of just cause for discharge is a factual issue to be determined by the jury. *Toussaint*, 408 Mich. at 623, 292 N.W.2d at 896; *Renny v. Port Huron Hosp.*, 427 Mich. 415, 429, 398 N.W.2d 327, 335 (1986). The presence of just cause in theory does not create a jury question. There must be a genuine factual issue to get to a jury. This is what the cases cited by the defendant recognize. *See* discussion, *infra; Rossi v. Harris/3M Document Products*, 741 F.Supp. 132, 135 (E.D.Mich.1990) (just cause existed when employee falsified his time records); *Bolen v. E.I. Dupont de Nemours & Co.*, 91–CV–40208–FL, unpublished opinion (E.D.Mich. Jan. 9, 1992) (Newblatt, J.) (just cause existed when employee was caught sleeping on the job); *Loftis v. G.T. Products*, 167 Mich.App. 787, 423 N.W.2d 358, *lv. to appeal denied* 431 Mich. 897 (1988) (just

cause existed when employee was absent from scheduled overtime); *Hale v. Comerica Bank–Detroit,* 189 Mich.App. 382, 473 N.W.2d 725 (1991) (just cause existed when employee violated bank's Code of Ethical Conduct by accepting $100 for approving loan application).

In *Diggs v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 861 F.2d 914 (6th Cir. 1988), however, it was undisputed that the employer had received the customer complaints that were offered as just cause for the plaintiff's discharge. The Sixth Circuit recognized "Michigan's strong preference for bringing these questions to a trier of fact," and upheld the district court's decision that the existence of the complaints did not establish the existence of just cause as a matter of law. *Id.* at 920–21. In support of its decision, the court quoted from *Toussaint.* "The court stated, '[A] promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge.'" *Diggs,* 861 F.2d at 921 (quoting *Toussaint,* 408 Mich. at 621, 292 N.W.2d at 895). The Sixth Circuit also quoted the following passage from *Renny.*

> The jury decides as a matter of fact whether the employee was discharged for cause. While the jury may not substitute its opinion for that of the employer's, it may determine whether the employee committed the specific misconduct for which he was fired, whether the firing was pretextual, whether the reason for discharge amounted to good cause, or whether the employer was selectively applying the rules. It is not enough that an employer acted in good faith or was not unreasonable.

*Renny,* 427 Mich. at 429, 398 N.W.2d at 335 (emphasis added).

**B.**

A simple application of *Diggs* is attractive. The undisputed receipt of customer complaints would seem to provide an employer with just cause, yet it was determined by the court that the complaints did not, as a matter of law, provide the employer with just cause. Similarly, the undisputed violation of the smoking ban would seem to provide just cause, but an application of *Diggs* would preserve that determination for the jury. *Diggs* is distinguishable, however, from the case at bar. In *Diggs,* the jury had to determine whether a course of conduct was consistent with the standards set forth in the contract. *Diggs,* 861 F.2d at 921. In the case at bar, it is undisputed that the plaintiff committed the specific misconduct for which he was terminated.[2] The conduct standards are set forth clearly, and it is spelled out in the employees' guide that "Violation of health and/or safety rules" could result in discharge. There is no need for a jury to determine whether the plaintiff's conduct was inconsistent with the employer's smoking policy.

The court in *Diggs* correctly identified, however, Michigan's preference for jury determinations of the existence of just cause. An employer's promise to discharge for just cause only would be illusory if the employer retained total discretion to determine when it had just cause. *See Toussaint,* 408 Mich. at 621, 292 N.W.2d at 895. Certainly, if the terms of employment state that certain conduct will result in termination, the employer should have just cause as a matter of law to terminate an employee who has engaged in such prohibited conduct. Conversely, if the terms of employment provide a less severe punishment for that conduct, the employee should be able to establish as a matter of law that the employer lacked just cause to terminate the employee who has engaged in such

---

**2.** The plaintiff argues that there is an issue of fact whether the rule was violated. In his deposition, the plaintiff stated that he is uncertain whether the cigarette was lit when he walked into the prohibited area. "Evidence suggesting a mere possibility is not enough to get past the summary judgment stage." *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986).

The plaintiff's inability to recollect whether the cigarette was lit or not makes his attempt to rebut the defendant's evidence that it was lit a suggestion of "a mere possibility." This cannot raise a genuine issue of fact. For purposes of summary judgment, then, it is undisputed that the plaintiff's cigarette was lit.

conduct. Many contracts, and other documents which set forth the terms of employment regarding rules and discipline, provide that certain conduct may result in discharge *or* some less severe disciplinary procedure. This creates a gray area where, by the express terms of the contract, the employer is left with discretion to determine whether just cause for termination exists. It appears that this discretion creates a risk, as the Michigan Supreme Court feared in *Toussaint*, of making illusory the employer's promise of termination for just cause only.

### C.

The Michigan Court of Appeals was not concerned with this risk in *Loftis v. G.T. Products*, 167 Mich.App. 787, 423 N.W.2d 358, *lv. to appeal denied* 431 Mich. 897 (1988). In that case, § 18 of the employee handbook provided a four-step disciplinary procedure. § 19 of the same handbook also stated that an employee's failure or refusal to work overtime as instructed by supervision "will be cause for immediate discharge *or other disciplinary action.*" *Id.* 167 Mich.App. at 792, 423 N.W.2d 358. The plaintiff was discharged after he missed scheduled Saturday overtime at least two times. *Id.* at 789–90, 423 N.W.2d 358. The Court of Appeals upheld summary disposition of the plaintiff's wrongful discharge claim, holding that § 19

> gives the company total discretion to decide when it will use the graduated § 18 disciplinary procedure and when it will fire an employee on the spot pursuant to § 19.... When reading § 18 and § 19, we are left with the conclusion that § 19 clearly grants to the defendant the right to fire the plaintiff and that the plaintiff, on reading § 19, must know that this provision gives defendant that right. The clear meaning of § 19 is that termination can result from failure to work overtime.

*Id.* at 793, 423 N.W.2d 358.

Johnson Control's handbook in the case at bar similarly gives the employer "total discretion" to determine when it will apply graduated discipline or discharge. An ap-plication of *Loftis* to the case at bar, then, would require the Court to defer to the employer's exercise of discretion, grant summary judgment and foreclose the plaintiff's right to a jury's determination of whether just cause existed for the plaintiff's discharge in this case.

*Rossi v. Harris/3M Document Products*, 741 F.Supp. 132 (E.D.Mich.1990) would suggest a similar outcome, but is distinguishable from this case. In that case, the employee falsified his time records, a major infraction which, under the terms of the "Disciplinary Action Guidelines," "preclude[s] the application of normal steps of progressive discipline." *Id.* at 135. Unlike the case at bar, the terms of employment in *Rossi* required termination for falsifying company records. The employer possessed no discretion. Another case cited by the defendant is also distinguishable. While *Johnson v. Honeywell Information Systems, Inc.*, 955 F.2d 409 (6th Cir.1992) shows that summary judgment is not precluded in determining the existence of just cause for termination, it is inapplicable to this case. The court considered "whether an employer may rely upon evidence of an employee's misconduct, discovered after termination, as a defense to a wrongful discharge claim in a just cause employment contract case." *Id.* at 412. Just cause in *Johnson,* was provided by the plaintiff's falsification of information contained in her application for employment. The court analyzed just cause in the context of resume fraud, rather than the employer's discretion. It did not consider whether just cause for termination could be established as a matter of law when the employer has discretion to discharge immediately or impose some less severe discipline.

In *Loftis*, and in the case at bar, the employee guidelines provide the employer with discretion to discharge the employee or impose some less severe discipline. It is the exercise of this discretion which threatens to make illusory the promise of discharge for just cause only. *See Toussaint,* 408 Mich. at 621, 292 N.W.2d at 895; *Renny,* 427 Mich. at 429, 398 N.W.2d at 335; and discussion, *supra.* The Michigan Su-

preme Court's concern for illusory promises of termination for just cause only was not considered by the *Loftis* court, and I conclude that it was decided erroneously because it is inconsistent with the prior holdings of the highest court in the state. I believe its reasoning is flawed, therefore, but not its result. Summary judgment *should* be granted to an employer in cases such as these, in which the employer reserves the discretion to discipline certain conduct with discharge or some less severe punishment.

## IV.

### A.

Prior to *Toussaint,* it was believed that all employment contracts of indefinite term were "indefinite hirings," terminable at will by either party. *Lynas v. Maxwell Farms,* 279 Mich. 684, 687, 273 N.W. 315, 316 (1937). The Michigan Supreme Court in *Toussaint* merely applied black letter contract law to recognize that the parties to an employment agreement of indefinite term have the power to contract to any terms they wish,[3] including a promise from the employer that the employee will be discharged for just cause only. *Toussaint,* 408 Mich. at 610, 292 N.W.2d at 890.

This has been misconstrued by much of the bar to create in the state of Michigan only two types of indefinite term employment contracts: at will and just-cause contracts. Briefs in support and opposition to motions for summary judgment in wrongful discharge cases are routinely divided into two sections. In the first, the parties fight over whether the employee had a legitimate expectation that a just-cause re-

lationship had been created. In the second, they argue whether the employer had just cause to terminate. Defendant employers predictably argued that the employment relationship was "at will," but regardless of the type of contract, the employer had just cause to terminate.

So it was with the case at bar. Although the Court has concluded in two separate opinions that a factual issue exists as to the existence of a just-cause contract, the defendant still argues that the relationship was terminable at will.[4] Recognizing the Court's rulings, however, it also argues that it had just cause to terminate the plaintiff. Indeed, this is the focus of the present battle. The defendant argues that the plaintiff's violations of its smoking ban create just cause for his termination as a matter of law. The plaintiff argues that the existence of just cause must be determined by a jury.

Thus, *Toussaint* claims are perceived as offering two extremes. Either a contract permits discharge of an employee at the will of the employer at any time and for any reason, or it permits discharge for just cause only. All of the middle ground has been ignored. Parties to a contract should have few limitations on the terms of their relationship, however. *Toussaint* merely recognizes this fact in the area of employment contracts.

There is no reason that parties to an employment contract could not agree that certain employee conduct may result in immediate discharge, if the employer so chooses, whether the conduct amounts to just cause for termination or not. And in

---

**3.** The parties' discretion is subject to public policy limitations, of course.

**4.** The February 3, 1992 Opinion carefully reviewed this issue and determined that an issue of fact remained for the jury's determination. In making that determination, the Court ignored an argument made by the defendant in a supplemental brief. In the brief, the defendant argued that the terms of the Employee Handbook did not apply to the plaintiff. The progressive disciplinary procedures in the handbook could not, therefore, create an issue of fact whether the plaintiff had a legitimate expectation of the existence of a just cause contract.

Because I concluded in the February 3rd Opinion that there was no issue of fact that just cause existed for the plaintiff's discharge, I expressly did not consider the additional argument, even though the first part of the Opinion carefully justified a finding that a factual issue existed on the existence of a just-cause contract. Memorandum Opinion and Order, February 3, 1992, at 11. The defendant's arguments that the Employee Handbook does not apply to the plaintiff have never been considered, and the defendant still maintains that its relationship with the plaintiff was strictly at will.

the same contract, the parties could agree that all other conduct is subject to just-cause standards. The parties could thereby create an employment contract that is partially an at will contract and partially a just-cause contract. I believe that such a contract was created in the case at bar.

### B.

As stated in previous Opinions, "a genuine issue of fact regarding the existence of a just-cause contract can be raised by the existence of progressive disciplinary procedures that are not accompanied by a written disclaimer of a just cause relationship." February 3, 1992 Memorandum Opinion and Order, at 4 (citing *Renny v. Port Huron Hosp.*, 427 Mich. 415, 417, 398 N.W.2d 327, 329 (1986)). Johnson Control's employee handbook provides a progressive disciplinary procedure. Pages 6–9 of the employee handbook set forth the employer's "Corrective Action Procedure," and provide three levels of conduct and the disciplinary responses the enumerated conduct will trigger. Violations of "A" rules receive an eight step process which includes discussion, several lengthening periods of suspension, and finally discharge. Violations of "B" rules receive a two step process of a single warning and then discharge. Violations of "C" rules receive a one step process of immediate discharge.

There is no written disclaimer of a just-cause relationship. To some extent, then, there may be a just-cause contract between the plaintiff and the employer. A definitive determination would have to await a jury's determination.

Page 9 of the handbook contains these additional provisions which are key to this case:

> Since the seriousness of the following violations can vary significantly in any individual situation, infractions may range from an "A" Rule to a "C" Rule depending upon the seriousness of the offense:

1. Immoral or indecent conduct.
2. Disorderly conduct, including threatening a Supervisor; the use of profane or abusive language.
3. Violation of health and/or safety rules.
4. Smoking in other than designated areas approved for smoking.
5. Negligence or inefficiency on the job.
6. Other actions or offenses detrimental to the welfare of the Company or anyone associated with the Company.

The behavior listed immediately above is subject to either a multi-step disciplinary procedure or immediate discharge, depending on the seriousness of the circumstances. Plainly, the employee handbook, which establishes many of the terms of the contract between the plaintiff employee and the defendant employer, creates a zone of discretion which is entered when the employee engages in certain prohibited conduct. When in that zone, the employee is more like an at-will employee. The presence in the same handbook of progressive disciplinary procedures indicates, however, that some kind of a just-cause relationship exists as well.

By creating a progressive disciplinary procedure while at the same time creating a zone of discretion, the parties have entered into a combination employment contract that is in one sense at will[5] and just cause at the same time. The employer, in effect, is stating to its employees, "If you engage in the behavior listed on page 9, the company reserves the right to terminate you, if it so pleases, or impose some less severe discipline. As long as you avoid violating the rules listed on page 9, however, you will be discharged for just cause only." Thus, the employee has a somewhat at-will contract for certain enumerated conduct, but in all other respects, he has a just-cause contract.

The language in the cases considering employment contracts in the wake of *Toussaint* seems to require such contracts to be

---

**5.** It is at will in the sense that if the appropriate conduct is established, the employer has discretion to discharge. It is not totally at will since the employee may have the right to have a fact finder, be it an arbitrator or jury, determine whether the employee actually engaged in the conduct alleged. Here, the fact of smoking is not disputed as mentioned previously.

either at will or "just cause." It cannot be said, however, that the employment relationship between Johnson Controls and the plaintiff was strictly an at-will relationship. Neither can it be said that it was strictly a just-cause relationship. In cases where the employer reserves the discretion to discipline certain conduct with immediate discharge or some less severe punishment, it is clear that the employment contract is a just-cause contract with express limitations.

If the plaintiff violated those policies listed on page 9 of the employee handbook, he could be terminated by the defendant at the defendant's will, and the employer's decision to discharge would not be subject to judicial review. All other conduct that was not enumerated on page 9 is subject to a just-cause standard. An employee engaging in conduct not listed on page 9 can be terminated only if just cause exists for the termination. An employer's determination that just cause exists then would be subject to judicial review in a manner prescribed by Michigan law.

### C.

If a court concludes that the undisputed conduct which caused the plaintiff's discharge is subject to the discretionary portion of the contract, the plaintiff's wrongful discharge claim is subject to dismissal. Such a dismissal has the same effect as a determination that a contract is strictly an at-will contract, rather than an expressly limited just-cause employment contract. Therefore, before summary judgment can be granted to an employer who terminates an employee under the terms of such a discretionary provision, the Court must be certain, as it must with any wrongful discharge claim, that there is no genuine issue of material fact that the employee did not have a legitimate expectation that an unlimited just-cause contract existed under which all conduct was subject to a just-cause standard.

Thus, the issue in this case is not, as it appeared above, "whether summary judgment is precluded by the existence of a genuine issue of fact whether the employer has just cause for termination when the express policy violated by the employee carries a variable level of discipline ranging from warning all the way up to discharge." *See infra.* The Court's analysis of this kind of case and this kind of employment contract has reverted from a review of the existence of just cause for termination to a modified review of the existence of a just-cause contract.

■■ When an employment contract states that certain conduct will provide the employer with discretion either to discharge the employee immediately or impose some less severe discipline, the question confronting the court is *not* whether just cause exists for the plaintiff's discharge. Rather, the court must determine whether a genuine issue of fact exists as to whether, either in all circumstances, or when he engaged in the conduct which precipitated his discharge, the employee had a legitimate expectation that a just-cause standard would be applied, and he therefore would be discharged only if just cause were found to exist.

Without a showing of a legitimate expectation, once the conduct leading to the discharge is established, the court must conclude that the employee engaging in such conduct was terminable at will, and the case must be dismissed. If the employee creates an issue of fact, however, a jury must determine whether the plaintiff's expectation that the conduct would result in discharge only if just cause existed was truly legitimate. Only if the expectation was legitimate must the jury determine whether just cause actually existed.

This approach to cases in which the terms of employment have reserved to the employer a zone of discretion to discipline certain enumerated conduct with immediate discharge or some less severe discipline is consistent with the Michigan Supreme Court's apparent desire to have juries determine whether just cause existed for termination. *Toussaint,* 408 Mich. at 623, 292 N.W.2d at 896; *Renny,* 427 Mich. at 429, 398 N.W.2d at 335. It also permits employers to provide its employees with the security of a just-cause contract while preserving the discretion, without fear of contrary just-cause reviews by a jury, to discipline with immediate discharge certain egregious conduct.

At the same time, this approach does not abandon the *Toussaint* court's concern about illusory promises of a just-cause contract. If, at the time of the formation of the contract, an employer explicitly and forthrightly enumerates that conduct that is subject to the zone of discretion, and that conduct subject to a just-cause standard, the employee would know the terms of his contract, and he would know that, as long as he did not engage in the conduct expressly made subject to his employer's discretion, he would be discharged for just cause only.

### D.

The plaintiff's entire argument for the existence of a just-cause relationship relies on the graduated disciplinary procedures provided in the employee handbook. He has produced no other evidence to support a claim that a just-cause relationship existed in all situations. The employee handbook, therefore, provides the relevant terms of the employment contract in this case. The Court turns to the handbook, then, to determine whether an issue of fact exists.

The terms of the handbook are clear. There is no genuine issue of fact as to whether the plaintiff could have a legit-

imate expectation that, in all circumstances, he would be discharged for just cause only. Certain behavior, including the violation of the health and safety rules and smoking in restricted areas, provides the employer with complete discretion to immediately discharge the employee or impose less severe discipline. The employee knows he is subject to discharge. The parties thereby entered into an employment relationship that was at will as far as the penalty for the enumerated behavior.

In all other respects, however, the parties had a just-cause relationship, and the plaintiff employee was terminable for just cause only, *as long as* he did not engage in that behavior for which the defendant employer reserved the discretion to discharge immediately. It would be an issue of fact whether the plaintiff had a legitimate expectation of discharge for just cause only if he abstained from all of the conduct listed on page 9 of the handbook. The plaintiff did *not* abstain from such conduct. Instead, he violated a policy that was subject to the employer's discretion. His employment was terminable at will under those circumstances.[6]

The plaintiff's argument that a just cause contract existed rests entirely on the employee handbook. Since the handbook clearly establishes an at-will relationship

---

**6.** The conduct for which the plaintiff was terminated was clearly defined by that part of the employee handbook that created the employer's zone of discretion. The employees had plenty of notice that conduct such as violation of the health and safety rules, clearly defined in other sections of the handbook, or smoking in restricted areas, is subject, at the employer's discretion, to immediate discharge or some less severe discipline. Other conduct listed on page 9 of the handbook grants the employer similar discretion, but the conduct that is subject to the discretion is defined much less clearly. "Immoral or indecent conduct," and "Negligence ... on the job," are somewhat vague, undefined and potentially boundless phrases. Of special concern to the Court is the sixth infraction listed, which provides the employer with discretion to discharge an employee for "Other offenses detrimental to the welfare of the Company or anyone associated with the Company."

Conduct which otherwise might fail to provide just cause for termination might be squeezed by employers to fit these amorphous definitions of conduct for which the employer has reserved discretion so that an employee

may be terminated without application of just-cause standards. The presence of such vaguely defined conduct in the list of conduct subject to the employer's discretion threatens to make illusory the employer's promise that the employment relationship is, except for certain specified circumstances, a just-cause contract. An employee reading some of the provisions on page 9 of the handbook would be unable to know what conduct is prohibited and should be avoided as a result. Unsure of what conduct to avoid, the employee would have none of the job security that otherwise would be secured by a just-cause contract.

It would seem that such vaguely defined conduct should not give an employer in an expressly limited just-cause contract the discretion to discharge. Perhaps the focus should be upon the employee's legitimate expectation that the conduct at issue was not subject to the employer's discretion but was subject instead to a just-cause standard. Since the plaintiff in this case was terminated for conduct that in fact is defined clearly, this Court need not consider the standards that should be applied by the courts

for the conduct listed on page 9, and a just-cause relationship in every other situation, the plaintiff has failed to create an issue of fact that he had a legitimate expectation of a just-cause contract in all circumstances. There is no genuine issue of fact that, for purposes of evaluating the defendant employer's ability to terminate the plaintiff employee for smoking in restricted areas of the employer's plant, the employment relationship was an at-will contract. The defendant, therefore, is entitled to summary judgment.

## V.

Insofar as the Court has reevaluated its previous position, the plaintiff's motion for reconsideration is GRANTED. Because the Court has determined that the defendant still is entitled to summary judgment, the reconsideration is for naught. The defendant's motion for summary judgment is GRANTED, and this case is DISMISSED. To the extent that the February 4, 1992 Judgment for the defendant is nullified by the granting of the plaintiff's motion for reconsideration, the Judgment is REINSTATED.

SO ORDERED.

to determine when such vaguely defined conduct provides the employer in an expressly limited just-cause employment contract with the authority to terminate the employee without application of just-cause standards.